Chief Justice Roberts
delivered the opinion of the Court.
In this case we consider whether police may enter a home without a warrant when they have an objectively reasonable basis for believing that an occupant is seriously injured or imminently threatened with such injury. We conclude that they may.
I
This case arises out of a melee that occurred in a Brigham City, Utah, home in the early morning hours of July 23, 2000. At about 3 a.m., four police officers responded to a call re *401 garding a loud party at a residence. Upon arriving at the house, they heard shouting from inside, and proceeded down the driveway to investigate. There, they observed two juveniles drinking beer in the backyard. They entered the backyard, and saw — through a screen door and windows — an altercation taking place in the kitchen of the home. According to the testimony of one of the officers, four adults were attempting, with some difficulty, to restrain a juvenile. The juvenile eventually “broke free, swung a fist and struck one of the adults in the face.” 2005 UT 13, ¶ 2, 122 P. 3d 506, 508. The officer testified that he observed the victim of the blow spitting blood into a nearby sink. App. 40. The other adults continued to try to restrain the juvenile, pressing him up against a refrigerator with such force that the refrigerator began moving across the floor. At this point, an officer opened the screen door and announced the officers’ presence. Amid the tumult, nobody noticed. The officer entered the kitchen and again cried out, and as the occupants slowly became aware that the police were on the scene, the altercation ceased.
The officers subsequently arrested respondents and charged them with contributing to the delinquency of a minor, disorderly conduct, and intoxication. In the trial court, respondents filed a motion to suppress all evidence obtained after the officers entered the home, arguing that the warrantless entry violated the Fourth Amendment. The court granted the motion, and the Utah Court of Appeals affirmed.
Before the Supreme Court of Utah, Brigham City argued that although the officers lacked a warrant, their entry was nevertheless reasonable on either of two grounds. The court rejected both contentions and, over two dissenters, affirmed. First, the court held that the injury caused by the juvenile’s punch was insufficient to trigger the so-called “emergency aid doctrine” because it did not give rise to an “objectively reasonable belief that an unconscious, semi *402 conscious, or missing person feared injured or dead [was] in the home.” 122 P. 3d, at 513 (internal quotation marks omitted). Furthermore, the court suggested that the doctrine was inapplicable because the officers had not sought to assist the injured adult, but instead had acted “exclusively in their law enforcement capacity.” Ibid.
The court also held that the entry did not fall within the exigent circumstances exception to the warrant requirement. This exception applies, the court explained, where police have probable cause and where “a reasonable person [would] believe that the entry was necessary to prevent physical harm to the officers or other persons.” Id., at 514 (internal quotation marks omitted). Under this standard, the court stated, the potential harm need not be as serious as that required to invoke the emergency aid exception. Although it found the case “a close and difficult call,” the court nevertheless concluded that the officers’ entry was not justified by exigent circumstances. Id., at 515.
We granted certiorari, 546 U. S. 1085 (2006), in light of differences among state courts and the Courts of Appeals concerning the appropriate Fourth Amendment standard governing warrantless entry by law enforcement in an emergency situation. Compare In re Sealed Case 96-3167, 153 F. 3d 759, 766 (CADC 1998) (“[T]he standard for exigent circumstances is an objective one”), and People v. Hebert, 46 P. 3d 473, 480 (Colo. 2002) (en banc) (considering the circumstances as they “would have been objectively examined by a prudent and trained police officer”), with United States v. Cervantes, 219 F. 3d 882, 890 (CA9 2000) (“[U]nder the emergency doctrine, ‘[a] search must not be primarily motivated by intent to arrest and seize evidence’” (quoting People v. Mitchell, 39 N. Y. 2d 173, 177, 347 N. E. 2d 607, 609 (1976)), and State v. Mountford, 171 Vt. 487, 492, 769 A. 2d 639, 645 (2000) (Mitchell test “requires] courts to find that the primary subjective motivation behind such searches was to provide emergency aid”).
*403 II
It is a “‘basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable.’ ” Groh v. Ramirez, 540 U. S. 551, 559 (2004) (quoting Payton v. New York, 445 U. S. 573, 586 (1980); some internal quotation marks omitted). Nevertheless, because the ultimate touchstone of the Fourth Amendment is “reasonableness,” the warrant requirement is subject to certain exceptions. Flippo v. West Virginia, 528 U. S. 11, 13 (1999) (per curiam); Katz v. United States, 389 U. S. 347, 357 (1967). We have held, for example, that law enforcement officers may make a warrantless entry onto private property to fight a fire and investigate its cause, Michigan v. Tyler, 436 U. S. 499, 509 (1978), to prevent the imminent destruction of evidence, Ker v. California, 374 U. S. 23, 40 (1963) (plurality opinion), or to engage in “ ‘hot pursuit’ ” of a fleeing suspect, United States v. Santana, 427 U. S. 38, 42, 43 (1976). “[Wjarrants are generally required to search a person’s home or his person unless ‘the exigencies of the situation’ make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment.” Mincey v. Arizona, 437 U. S. 385, 393-394 (1978).
One exigency obviating the requirement of a warrant is the need to assist persons who are seriously injured or threatened with such injury. “ ‘The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency.’” Id., at 392 (quoting Wayne v. United States, 318 F. 2d 205, 212 (CADC 1963) (Burger, J.)); see also Tyler, supra, at 509. Accordingly, law enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury. Mincey, supra, at 392; see also Georgia v. Randolph, ante, at 118 (“[I]t would be silly to suggest that the police would commit a tort by entering ... to determine *404 whether violence (or threat of violence) has just occurred or is about to (or soon will) occur”).
Respondents do not take issue with these principles, but instead advance two reasons why the officers’ entry here was unreasonable. First, they argue that the officers were more interested in making arrests than quelling violence. They urge us to consider, in assessing the reasonableness of the entry, whether the officers were “indeed motivated primarily by a desire to save lives and property.” Brief for Respondents 3; see also Brief for National Association of Criminal Defense Lawyers as Amicus Curiae 6 (entry to render emergency assistance justifies a search “only when the searching officer is acting outside his traditional law-enforcement capacity”). The Utah Supreme Court also considered the officers’ subjective motivations relevant. See 122 P. 3d, at 513 (search under the “emergency aid doctrine” may not be “primarily motivated by intent to arrest and seize evidence” (internal quotation marks omitted)).
Our cases have repeatedly rejected this approach. An action is “reasonable” under the Fourth Amendment, regardless of the individual officer’s state of mind, “as long as the circumstances, viewed objectively, justify [the] action.” Scott v. United States, 436 U. S. 128, 138 (1978) (emphasis added). The officer’s subjective motivation is irrelevant. See Bond v. United States, 529 U. S. 334, 338, n. 2 (2000) (“The parties properly agree that the subjective intent of the law enforcement officer is irrelevant in determining whether that officer’s actions violate the Fourth Amendment...; the issue is not his state of mind, but the objective effect of his actions”); Whren v. United States, 517 U. S. 806, 813 (1996) (“[W]e have been unwilling to entertain Fourth Amendment challenges based on the actual motivations of individual officers”); Graham v. Connor, 490 U. S. 386, 397 (1989) (“[0]ur prior cases make clear” that “the subjective motivations of the individual officers . . . ha[ve] no bearing on whether a particular seizure is ‘unreasonable’ under the Fourth Amend *405 ment”). It therefore does not matter here — even if their subjective motives could be so neatly unraveled — whether the officers entered the kitchen to arrest respondents and gather evidence against them or to assist the injured and prevent further violence.
As respondents note, we have held in the context of programmatic searches conducted without individualized suspicion — such as checkpoints to combat drunk driving or drug trafficking — that “an inquiry into programmatic purpose” is sometimes appropriate. Indianapolis v. Edmond, 531 U. S. 32, 46 (2000) (emphasis added); see also Florida v. Wells, 495 U. S. 1, 4 (1990) (an inventory search must be regulated by “standardized criteria” or “established routine” so as not to “be a ruse for a general rummaging in order to discover incriminating evidence”). But this inquiry is directed at ensuring that the purpose behind the program is not “ultimately indistinguishable from the general interest in crime control.” Edmond, 531 U. S., at 44. It has nothing to do with discerning what is in the mind of the individual officer conducting the search. Id., at 48.
Respondents further contend that their conduct was not serious enough to justify the officers’ intrusion into the home. They rely on Welsh v. Wisconsin, 466 U. S. 740, 753 (1984), in which we held that “an important factor to be considered when determining whether any exigency exists is the gravity of the underlying offense for which the arrest is being made.” This contention, too, is misplaced. Welsh involved a warrantless entry by officers to arrest a suspect for driving while intoxicated. There, the “only potential emergency” confronting the officers was the' need to preserve evidence (i. e., the suspect’s blood-alcohol level) — an exigency that we held insufficient under the circumstances to justify entry into the suspect’s home. Ibid. Here, the officers were confronted with ongoing violence occurring within the home. Welsh did not address such a situation.
*406 We think the officers’ entry here was plainly reasonable under the circumstances. The officers were responding, at 3 o’clock in the morning, to complaints about a loud party. As they approached the house, they could hear from within “an altercation occurring, some kind of a fight.” App. 29. “It was loud and it was tumultuous.” Id., at 33. The officers heard “thumping and crashing” and people yelling “stop, stop” and “get off me.” Id., at 28, 29. As the trial court found, “it was obvious that . . . knocking on the front door” would have been futile. Id., at 92. The noise seemed to be coming from the back of the house; after looking in the front window and seeing nothing, the officers proceeded around back to investigate further. They found two juveniles drinking beer in the backyard. From there, they could see that a fracas was taking place inside the kitchen. A juvenile, fists clenched, was being held back by several adults. As the officers watch, he breaks free and strikes one of the adults in the face, sending the adult to the sink spitting blood.
In these circumstances, the officers had an objectively reasonable basis for believing both that the injured adult might need help and that the violence in the kitchen was just beginning. Nothing in the Fourth Amendment required them to wait until another blow rendered someone “unconscious” or “semi-conscious” or worse before entering. The role of a peace officer includes preventing violence and restoring order, not simply rendering first aid to casualties; an officer is not like a boxing (or hockey) referee, poised to stop a bout only if it becomes too one-sided.
The manner of the officers’ entry was also reasonable. After witnessing the punch, one of the officers opened the screen door and “yelled in police.” Id., at 40. When nobody heard him, he stepped into the kitchen and announced himself again. Only then did the tumult subside. The officer’s announcement of his presence was at least equivalent to a knock on the screen door. Indeed, it was probably the *407 only option that had even a chance of rising above the din. Under these circumstances, there was no violation of the Fourth Amendment’s knock-and-announce rule. Furthermore, once the announcement was made, the officers were free to enter; it would serve no purpose to require them to stand dumbly at the door awaiting a response while those within brawled on, oblivious to their presence.
Accordingly, we reverse the judgment of the Supreme Court of Utah, and remand the case for further proceedings not inconsistent with this opinion.

It is so ordered.