06-0339-cr
United States v. Klump

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

--------

August Term, 2007

(Argued: June 2, 2008                    Decided: August 4, 2008)

Docket No. 06-0339-cr

-------------------------------------------------------------X

UNITED STATES OF AMERICA,

                    Appellee,

                    - v. -

HAROLD KLUMP,

                    Defendant-Appellant.

-------------------------------------------------------------X

Before:   McLAUGHLIN, SACK, and LIVINGSTON, Circuit Judges.

Appeal from a judgment of the United States District Court for the Western District of New York (Arcara, C.J.), convicting defendant, after a jury trial, of manufacturing marijuana, possessing with the intent to sell marijuana, and possessing a firearm in furtherance of a drug-trafficking crime.

AFFIRMED.

                              MONICA J. RICHARDS, Assistant
                              United States Attorney (Terrance P.
                              Flynn, United States Attorney for
                              the Western District of New York),
                              Buffalo, New York, for Appellee.

                              BRUCE R. BRYAN, ESQ., Syracuse, New
                              York, for Defendant-Appellant.

McLAUGHLIN, Circuit Judge:

Harold Klump appeals from a judgment of conviction entered on January 11, 2006, following a jury trial in the United States District Court for the Western District of New York (Arcara, C.J.). Klump was convicted on one count of manufacturing 1,000 or more marijuana plants, one count of possessing with intent to distribute 1,000 or more marijuana plants, and one count of possessing a semiautomatic assault weapon in furtherance of a drug-trafficking crime. He was sentenced to two concurrent terms of 240 months' imprisonment on the drug counts and a consecutive term of 120 months' imprisonment on the gun count.

On appeal, Klump contests the denial of his pretrial motion to suppress evidence seized pursuant to a search warrant. He argues that the warrant was invalid because it was based on (1) evidence of criminal activity observed during an illegal warrantless search of his warehouse, and (2) an affidavit that contained several material misstatements and omitted critical information. Klump also challenges his sentence on the gun count because it was imposed pursuant to a statute that had expired by the time he was sentenced.

We agree with the district court that exigent circumstances justified the warrantless entry into the warehouse, and that the search warrant affidavit contained no material misstatements or

2

omitted material information.  We also find that the district court properly sentenced Klump on the gun count.  Accordingly, we affirm.

**BACKGROUND**

In October 2002, Drug Enforcement Administration ("DEA") Task Force Agent Cory Higgins executed an affidavit in support of a warrant to search a warehouse located at 900 Genesee Street in Buffalo, New York.  The affidavit set forth the following information.

While surveilling the home of Jeremy Page in connection with an on-going narcotics investigation, DEA agents saw a white van, driven by someone agents believed to be Harold Klump, arrive and pick up Page.  Acting on information that Page's employer drove a white van and ran a large marijuana-growing operation somewhere on the east side of Buffalo, the agents followed the van to Home Depot.  There, the suspects bought PVC plumbing pipe, which is commonly used to grow marijuana.  They then drove to a warehouse located at 900 Genesee Street, which, according to City of Buffalo tax records, was owned by Klump.  The suspects carried the PVC pipe into the warehouse.

The agents surveilled the warehouse for the next several hours.  During this time, the agents stopped a van shortly after it left the warehouse when the driver failed to signal at a

3

nearby intersection.  They saw several marijuana leaves on the driver's side floor.  The agents later stopped another vehicle as it left the warehouse and detected a strong smell of marijuana.  They searched the driver and found a quarter pound of marijuana.

Klump and Page left the warehouse at around 2:35 pm and were stopped by DEA agents.  The agents then smelled smoke coming from the warehouse and called the fire department.  Aware that there were two guard dogs inside, the agents accompanied the firemen into the building.  While inside, the agents saw approximately 300 marijuana plants and a handgun.

Later that day, on the basis of DEA Agent Higgins's affidavit described above, a Magistrate Judge signed a warrant authorizing agents to search the warehouse.  Pursuant to the search, agents seized 1,044 marijuana plants and a semiautomatic Mack 11 carbine rifle.

In February 2003, Klump was charged with: (1) manufacturing over 1,000 marijuana plants in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A); (2) possessing with intent to distribute over 1,000 marijuana plants in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A); and (3) possessing a semiautomatic assault weapon in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) and (c)(1)(B)(i).

Klump moved to suppress the evidence obtained pursuant to the search warrant. He argued that the warrant was invalid because it was based on observations made by DEA agents during an illegal warrantless search of the warehouse. Klump also alleged that the search warrant affidavit omitted critical information relevant to the issue of probable cause, including that (1) no fire was ultimately discovered at the warehouse, and (2) one of the men whom the agents stopped as he left the warehouse told the agents there was construction going on inside, which provided a perfectly innocent reason for the purchase of the PVC pipe.

In October 2003, a Magistrate Judge held a hearing on Klump's motion to suppress. The Buffalo Fire Department Battalion Chief, William Cunningham, who responded to the call about the smell at the warehouse, testified that, shortly after arriving, the agents told him they were conducting a narcotics investigation and thought that their suspects might be destroying evidence. Cunningham saw no smoke or fire, but smelled what he described as a "half electrical, half oily . . . kind of sweet . . . smell . . . that was coming out of the top of the building." According to Cunningham, "it was hard to tell exactly what it was, but it definitely had an odor of something burning." He also stated that, over the course of his twenty-eight year career, he had encountered "really major fire[s]" that were

contained entirely inside of a building, and where there was "just an odor" and very little or no smoke outside.

Cunningham testified that he entered the warehouse to investigate the odor. The DEA agents accompanied the firefighters inside and subdued the two pit bulls that were guarding the entrance. The firefighters and the agents then inspected all three floors of the warehouse but found no smoke or fire.

DEA Special Agent Dale Kasprzyk, the law enforcement supervisor on the scene, testified that the agents accompanied the firefighters into the building because of concerns for the firefighters' safety. In his experience, marijuana-growing operations were often booby-trapped or otherwise protected in ways that could have posed a danger to the firefighters.

William Donovan, a City of Buffalo police officer assigned to the DEA, entered the warehouse with the firefighters. Donovan testified that he saw numerous marijuana plants and a handgun while inspecting a room on the first floor, but did not touch or otherwise remove anything. After the fire inspection was complete, all fire and law enforcement personnel left the warehouse, and the agents secured the building to await a search warrant. While the agents waited, Page informed them that the odor could be from a furnace he had lit.

In February 2004, the Magistrate Judge recommended denial of the motion to suppress. He concluded that the firefighters and agents were justified in entering the warehouse to investigate the source of the smell, that the scope of the search was commensurate with the exigency, and that the evidence observed by the agents in plain view while inside was properly included in the search warrant affidavit. He also found that the affidavit was not misleading.

In May 2004, the district court adopted the Magistrate Judge's recommendation, over Klump's objections.

During Klump's jury trial, there was testimony that, contrary to what the affidavit stated, Klump was not the person who picked Page up at his home on the day in question, and the DEA agents saw only one marijuana leaf in the van that was stopped soon after leaving the warehouse. There was also testimony that workers were repairing a water pump and a water-damaged floor in the warehouse at the time of the search. The jury convicted Klump of all charges.

At sentencing, Klump argued that the ten-year mandatory minimum sentence on the gun count mandated by 18 U.S.C. § 924(c)(1)(B)(i) for possessing a semiautomatic assault weapon in furtherance of a drug-trafficking crime did not apply to him. He contended that this provision, though operative when he

7

committed the offense and when he was convicted, was inapplicable because it had expired fifteen months before sentencing. The district court rejected Klump's argument, and sentenced him to two concurrent terms of 240 months' imprisonment on the drug counts, and a consecutive term of 120 months' imprisonment on the gun count.

**DISCUSSION**

Klump makes two arguments: (1) the district court erred in denying his pretrial motion to suppress, and (2) the district court improperly sentenced him pursuant to 18 U.S.C. § 924(c)(1)(B)(i) on the gun possession charge. We reject both arguments.

I.    The Motion to Suppress

Klump challenges the district court's determination that exigent circumstances supported the initial warrantless entry into the warehouse, and that the search warrant affidavit did not contain material misstatements or omit material information.

A.    Exigent Circumstances

Exigent circumstances provide an exception to the Fourth Amendment's warrant requirement. Coolidge v. New Hampshire, 403 U.S. 443, 474-75 (1971). "A district court's determination as to whether exigent circumstances existed is fact-specific, and will not be reversed on appeal unless clearly erroneous." United

States v. MacDonald, 916 F.2d 766, 769 (2d Cir. 1990) (en banc). This standard requires us to uphold the ruling of the court below unless we are "left with the definite and firm conviction that a mistake has been committed." United States v. Iodice, 525 F.3d 179, 185 (2d Cir. 2008) (internal citation and quotation marks omitted).

The test to determine whether exigent circumstances exist "is an objective one that turns on . . . the totality of the circumstances confronting law enforcement agents in the particular case." MacDonald, 916 F.2d at 769. The core question is whether the facts, as they appeared at the moment of entry, would lead a reasonable, experienced officer, see United States v. Zabare, 871 F.2d 282, 291, 292 (2d Cir. 1989), to believe that there was an "urgent need to render aid or take action," MacDonald, 916 F.2d at 769 (internal quotation marks omitted). "A burning building clearly presents an exigency of sufficient proportions to render a warrantless entry 'reasonable.'" Michigan v. Tyler, 436 U.S. 499, 509 (1978).

The presence of exigent circumstances, of course, does not give government officials unfettered license to conduct a generalized search for evidence of criminal activity. Rather, the warrantless search "must be strictly circumscribed by the exigencies which justify its initiation." Mincey v. Arizona, 437

9

U.S. 385, 393 (1978) (internal citation and quotation marks omitted). Where officials enter private property to fight a fire, therefore, the scope of the warrantless search is limited to that reasonably necessary to extinguish the blaze, determine the cause and origin of a fire, and ensure against rekindling. See Michigan v. Clifford, 464 U.S. 287, 293 (1984). However, any contraband or other evidence of a crime seen in plain view during such a circumscribed search may be used to establish probable cause to obtain a warrant to conduct a broader search. See id. at 294.

Applying these standards, we find no clear error in the district court's determination that the firefighters and agents reasonably believed it was necessary to enter the warehouse. Upon arrival, the fire chief smelled what he described as a "half electrical, half oily . . . kind of sweet" smell that "definitely had an odor of something burning." Having been to major fires in buildings where there was very little or no smoke outside, just an odor, the fire chief decided, in his professional judgment, that it was necessary to enter the warehouse and investigate the cause of the odor.

Under these circumstances, the firefighters had an objectively reasonable basis for believing that there was a fire inside the warehouse. Nothing in the Fourth Amendment required

10

them to wait until they saw actual smoke or flames to enter a building that they reasonably believed might be on fire. Cf. Brigham City v. Stuart, 547 U.S. 398, 406 (2006) (holding that the Fourth Amendment does not require police "to wait until another blow render[s] someone 'unconscious' or 'semi-conscious' or worse before entering").

Nor is it relevant that no fire or smoke was found. The objective standard for assessing reasonableness focuses on what the facts, as they appeared at the moment of entry, would lead a reasonable, experienced officer to believe. See Zabare, 871 F.2d at 292. It does not permit a court to evaluate the officer's belief on the basis of hindsight. See id.

Klump maintains that the warrantless entry was unreasonable because the firefighters and agents entered the warehouse to look for evidence of a crime, not to respond to a legitimate exigency. As Klump concedes, however, the Supreme Court has made clear that the subjective intent of government agents is irrelevant to determining whether a particular search was reasonable under the Fourth Amendment. See, e.g., Brigham, 547 U.S. at 404-05 (citing cases). Rather, "[a]n action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed objectively, justify [the] action.'" Id. at 404 (alteration in original) (quoting Scott v.

*United States*, 436 U.S. 128, 138 (1978)).  Thus, even if the agents' subjective motives in entering the warehouse could "be so neatly unraveled," id. at 405, they simply do not matter.  Klump argues that this rule should not apply where the threat is to property or evidence, rather than life or limb.  He offers no principled reason to adopt this distinction, however, and we can conceive of none.

We also reject Klump's assertion that the scope of the search exceeded the exigency.  He asserts that the firefighters and agents had no reason to search the first and second floors of the warehouse because the burning smell appeared to originate from the top of the building.  He contends that the firefighters and agents should have proceeded directly to the third floor and, having found no fire or smoke there, immediately left the warehouse.  We disagree.  Under the totality of the circumstances, the firefighters acted reasonably in searching all three floors to locate the source of the burning smell and determine whether the warehouse was on fire.  Indeed, "the exigencies of the situation made that course imperative."  *Warden v. Hayden*, 387 U.S. 294, 298 (1967) (internal citation and quotation marks omitted).

Accordingly, because the firefighters and DEA agents were legally within the warehouse, observation of the marijuana and

12

handgun in plain view properly served as the basis for the subsequent search warrant.

B.    Material Misstatements and Omissions

We review de novo whether alleged misstatements or omissions in a search warrant affidavit render the warrant invalid.  See United States v. Canfield, 212 F.3d 713, 717 (2d Cir. 2000).

A search warrant affidavit is presumed reliable.  Franks v. Delaware, 438 U.S. 154, 171 (1978).  "In certain circumstances, however, a defendant may challenge the truthfulness of factual statements made in the affidavit, and thereby undermine the validity of the warrant and the resulting search or seizure."  United States v. Awadallah, 349 F.3d 42, 64 (2d Cir. 2003).  To void the warrant and suppress the evidence based on a defective affidavit, the defendant must demonstrate, by a preponderance of the evidence, that there were intentional and material misstatements or omissions in the search warrant affidavit.  Id.

A misstatement or omission is material if it is "necessary to the [issuing] judge's probable cause finding."  Canfield, 212 F.3d at 718 (internal citation and quotation marks omitted).  To determine materiality, we "disregard the allegedly false statements and determine whether the remaining portions of the affidavit would support probable cause to issue the warrant."  Id. (internal citation and quotation marks omitted).  If the

13

emended affidavit supports probable cause, the inaccuracies were not material and suppression is not warranted. Id.

In determining whether there is probable cause, our task is "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit[,] . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983).

Here, Klump isolates five misstatements or omissions in the affidavit that he believes render it misleading: (1) the agents "smelled smoke" rather than just an "odor"; (2) Klump picked Page up from his house and bought the PVC pipe, when it was actually not Klump; (3) the agents saw marijuana leaves in the van they stopped, instead of just one leaf; (4) the men stopped after leaving the warehouse did not mention there was a fire inside; and (5) there was construction going on at the warehouse, which provided an innocent reason for the purchase of the PVC pipe.

We first note that Klump failed to mention his first four challenges in the district court. It is well-settled that "the failure to assert a particular ground in a pre-trial suppression motion operates as a waiver of the right to challenge the subsequent admission of evidence on that ground." United States v. Schwartz, 535 F.2d 160, 163 (2d Cir. 1976). This oversight

will be excused only "for good cause." Fed. R. Crim. P. 12(e). Klump had ample opportunity to raise these challenges in the district court, and has not established a reasonable excuse for his failure to do so. Moreover, even if Klump had not waived these arguments, we would reach the same result. None of the alleged misstatements or omissions in the affidavit draw the reasonableness of the initial warrantless entry into question. That entry lead to the plain-sight discovery of a handgun and large amounts of marijuana. This discovery was described in the affidavit and was sufficient by itself, regardless of the misstatements and omissions alleged by Klump, to support a finding of probable cause to search the warehouse further. See Canfield, 212 F.3d at 719.

The failure to state in the affidavit that there was ongoing construction at the warehouse was likewise immaterial. "The fact that an innocent explanation may be consistent with the facts alleged . . . does not negate probable cause." United States v. Fama, 758 F.2d 834, 838 (2d Cir. 1985). Given the agent's sworn statement that PVC pipe is often used to grow marijuana, which Klump does not dispute, the warrant likely would have issued even if the magistrate had been apprised of the construction. Thus, this omission was not material.

Accordingly, the search warrant was valid.

15

II.  The Sentence

Klump challenges the district court's imposition of a ten-year mandatory minimum sentence on the gun possession count under § 924(c)(1)(B)(i) because that statute had expired, pursuant to a sunset provision, before he was sentenced.  Instead, according to Klump, the district court should have imposed the five-year mandatory minimum sentence mandated by the version of § 924(c) in effect at the time he was sentenced.  We review such legal challenges de novo, United States v. Smith, 354 F.3d 171, 172 (2d Cir. 2003), and conclude that the district court properly sentenced Klump.

Under the current version of 18 U.S.C. § 924(c), "any person who, during and in relation to any . . . drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall . . . be sentenced to a term of imprisonment of not less than 5 years."  Before September 2004, 18 U.S.C. § 924(c)(1)(B)(i) (2004) mandated a ten-year mandatory minimum sentence "if the firearm possessed by a person convicted of a violation of this subsection . . . is a . . . semiautomatic assault weapon."

The older version of § 924(c)(1)(B)(i) applies to Klump even though it had expired before he was sentenced.  Pursuant to 1 U.S.C. § 109, "[t]he expiration of a . . . statute shall not have

16

the effect to release or extinguish any penalty . . . incurred under such statute, unless the . . . statute shall so expressly provide." Section 924(c)(1)(B)(i) contains no provision expressly prohibiting its application to defendants, like Klump, who were convicted of possessing a semiautomatic assault weapon before the statute expired. Thus, the district court properly sentenced him to the ten-year mandatory minimum sentence called for by the statute.

**CONCLUSION**

For the foregoing reasons, we AFFIRM the judgment of the district court.