WINTER, Circuit Judge
dissenting:
I respectfully dissent. In my view, there was both consent and exigent circumstances, either of which is dispositive, justifying the securing of appellant’s gun.
There is no Fourth Amendment violation where an individual voluntarily consents to a search. United States v. Garcia, 56 F.3d 418, 422 (2d Cir.1995). Consent may be inferred from an individual’s statements and conduct. It is not necessary that the person giving consent “recite the talismanic phrase: “You have my permission to search.’ ” United States v. Buettner-Janusch, 646 F.2d 759, 764 (2d Cir.1981).
Appellant testified as follows:
Q. [Sergeant Perry] just asked do you have a gun?
A. Yes. That’s what she asked me.
Q. Did she ask you where the gun was?
A. No. She said do you have a gun in this apartment.
Q. And you responded — did you finish your answer? You said that—
A. No. I told her: Yes, I do, in my room. My mother gave me the gun to turn into the church. It is in the room on the chair by my bed under the papers.
In my view, appellant’s statements constituted implied consent to the officer’s entering his bedroom and securing the gun. Informing the police of the precise but concealed location of the gun — under papers and on a particular chair — had no purpose other than to facilitate the immediate seizure of the weapon. Certainly, appellant was not simply being helpful to the officers in any putative obtaining of a warrant. I would therefore follow the First Circuit and hold that a defendant’s directions to a firearm amounts to, or may be found to amount to,[1] implied consent, United States v. Reynolds, 646 F.3d 63 (1st Cir.2011), at least for the limited purpose of retrieving the gun.
The existence of exigent circumstances of course also justifies a warrantless search, United States v. Klump, 536 F.3d 113, 117 (2d Cir.2008) (citing Coolidge v. New Hampshire, 403 U.S. 443, 474-75, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)), and “[a] district court’s determination as to whether exigent circumstances existed is fact-specific, and will not be reversed unless clearly erroneous.” Klump, 536 F.3d at 117 (quoting United States v. MacDonald, 916 F.2d 766, 769 (2d Cir.1990) (en banc)). The Fourth Amendment standard for exigent circumstances is objective: based on the known circumstances at the time, whether a reasonable, experienced officer would believe there was an urgent need to *160 take action, particularly including situations posing risks to the police or others. Minnesota v. Olson, 495 U.S. 91, 100, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990).
The known facts here support a finding that it was necessary to enter the bedroom to locate and secure the weapon. The officers were in the apartment because Vaz, appellant’s roommate, had told them that appellant had a gun in the apartment. There was a legitimate concern that appellant might be prone to use the gun. Vaz had stated that appellant had revealed the gun during a dispute and that Vaz needed police protection to enter the apartment and gather his belongings. At the time the gun was retrieved, appellant was not in handcuffs. The police had not done a protective sweep of appellant’s bedroom, which was dark at the time of the entry, and the officers could not have been certain that there was no one else in the room. Furthermore, although appellant told the officers where the gun was, they had no way of knowing that he was telling the truth without actually locating it. These facts presented a risk that appellant, or an unknown third party, might seek to grab the weapon.
My colleagues perceive the risk of a third party presence as insignificant because the officers did not testify to a perceived danger that there was someone else in the bedroom. However, the test for exigent circumstances is objective and, therefore, the actual state of mind of the officers is not relevant. See Brigham City, Utah v. Stuart, 547 U.S. 398, 404, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006). But even if the officers’ subjective anxieties were relevant, appellant’s testimony fully supports the existence of reasonable anxiety on the officers’ part as to the presence of another person. Appellant testified:
Q. And, what happened next?
A. Then when Jamal [Vaz] went in his room Officer Manuel [sic] I think — -I believe that’s his name — came up, he went to look in but he didn’t want to stick his head all the way in the door because it was dark. So, he tried to cut the light on but the light switch, that’s the power switch to cut the TV off.
Q. Slow down. Slow down.
He tried to turn the lights on because there were no lights in the room. Is that what you said?
A. Yes.
Q. And then what happened?
A. Then the TV went out and I said something — I said something stupid I said: Well, now I have to reset that, meaning the cable box. So, he just went in there, got the paper, came out and then he said — excuse me — this is a big ass gun. He opened up the paper—
Q. Just to go over this again, Sergeant Perry, the officer that stopped you— A. Yes.
Q. —in the hallway, did she go in the room?
A. No.
Q. Just the other officer?
A. Just Officer Manuel [sic] went inside the room.
Q. Did he see anything from what you could tell? Could you see what he was doing before he went into your room?
A. No. He was just trying to stick his head inside the room. There wasn’t no flashlight, he was trying to stick his head because he was nervous, you don’t know what is behind the door so that’s when he did the switch.
THE COURT: Before he went in had you already told him where the gun was?
*161 THE WITNESS: I told the sergeant, yes.
THE COURT: You already told them it is on the chair under the papers?
THE WITNESS: Under the papers, yes.
The proper test for the existence of exigent circumstances involves balancing the degree of potential harm against the likelihood of its occurrence. See, e.g., Scott v. Harris, 550 U.S. 372, 373, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (holding that a police officer’s use of deadly force to stop a high speed car chase was reasonable under the Fourth Amendment through “weighing the perhaps lesser probability of injuring or killing numerous bystanders against the perhaps larger probability of injuring or killing a single person,” by taking into account “the number of lives at risk” and the “relative culpability” of the police officer and the respondent). To be sure, the likelihood of violent acts occurring was diminished by the actions and presence of the police prior to securing the gun. However, the magnitude of harm that could have resulted from appellant or an unknown third party rashly attempting to seize the gun made it objectively reasonable for the officers to believe that it should be secured immediately. See United States v. Newsome, 475 F.3d 1221, 1226 (11th Cir.2007) (“It would defy common sense to allow the officers to question [a defendant] as to whether there was any threat and then prevent them from neutralizing that threat.”).
Viewing the likelihood of harm as low, my colleagues do not factor into the calculation the possibly calamitous harm, including harm to appellant or a third party, that might have occurred had the officers not used their common sense and secured the weapon. This omission explains why there are no precedents involving facts remotely close to those before us in which the securing of a weapon leads to its suppression. In fact, the caselaw is all to the contrary. See, e.g., United States v. Lopez, 989 F.2d 24, 27 (1st Cir.1993) (upholding that a warrantless search was “justified as one not merely for evidence or even contraband but for a dangerous weapon in a building where others might gain access to it”); see also, Chimel v. California, 395 U.S. 752, 762-63, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) (concluding that it is “reasonable” for an arresting officer to search “the area into which an arrestee might reach in order to grab a weapon” because “[a] gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested”); United States v. Antwine, 873 F.2d 1144, 1147 (8th Cir.1989) (“The clear implication of Quarles is that a warrantless seizure of a weapon may be considered ‘reasonable’ within the meaning of the Fourth Amendment when justified by an officer’s legitimate concern for someone’s safety.”).
In any event, the conclusion of the district court is not clearly erroneous. I therefore respectfully dissent.

. If implied consent were the only dispositive issue, I would agree to a remand for a finding by the district court. However, a remand seems unnecessary to me because I would affirm the finding of exigent circumstances.