**UNITED STATES of America,**

v.

**Michael C. O'NEILL, Defendant.**

1:15–CR–00151 EAW

United States District Court, W.D. New York.

Signed March 3, 2017

Frank T. Pimentel, U.S. Attorney's Office, Buffalo, NY, for United States of America.

Joseph M. LaTona, Buffalo, NY, for Defendant.

## DECISION AND ORDER

ELIZABETH A. WOLFORD, United States District Judge

## INTRODUCTION

Defendant Michael C. O'Neill ("Defendant") was indicted on August 13, 2015, with two counts charging the alleged unlawful making and possession of a destructive device. (Dkt. 11). The underlying criminal charges arose from an incident on July 21, 2015, when emergency personnel responded to a call from Defendant's mother during the early morning hours about an explosion in the detached garage of her home at 6761 Walmore Road, Wheatfield, New York. Defendant suffered injuries from the explosion ultimately resulting in the amputation of his left leg below the knee.

Defendant filed omnibus motions seeking a variety of relief, including the suppression of evidence seized from the garage without a warrant, the suppression of evidence seized from a search of the home with a warrant, and the suppression of statements made by Defendant at the hospital while recovering from surgery. (Dkt. 46). Magistrate Judge Hugh B. Scott issued a Report and Recommendation ("R & R")[1] on November 17, 2016, recommend-

---

1. This Court referred all pretrial matters to United States Magistrate Judge Hugh B. Scott

ing that this Court deny Defendant's dispositive motions, and also resolving Defendant's non-dispositive motions. (Dkt. 82). Defendant has filed various objections. (Dkt. 86).

Because there are gaps in the record, and further fact finding is required before this Court can render a decision with respect to the various issues raised by Defendant in his omnibus motions, the matter is referred back to Magistrate Judge Scott to conduct a further evidentiary hearing consistent with this Decision and Order.

## PROCEDURAL HISTORY

Defendant filed his omnibus motions on February 26, 2016. (Dkt. 46). Among other issues raised, Defendant sought to suppress evidence seized from the detached garage and home on the date of the incident, and he also sought to suppress statements that he made to law enforcement officers that same day while he was recovering from surgery at the Erie County Medical Center ("ECMC").

The Government filed a response on March 16, 2016. (Dkt. 47). Oral argument was held before Magistrate Judge Scott on March 29, 2016, at which time he reserved decision with respect to most of the issues raised by Defendant. (Dkt. 51). On April 12, 2016, Magistrate Judge Scott issued a Decision and Order, allowing Defendant to file a satisfactory affidavit in support of his motion to suppress statements made at ECMC, explaining: "If [Defendant] files a satisfactory affidavit then the Court will schedule an evidentiary hearing for the motion in question. The Court has reviewed the parties' papers and the record so far and is satisfied that a hearing on O'Neill's other motions will not be necessary." (Dkt. 53 at 2). Thus, Magistrate Judge Scott determined that the only

hearing that would be required (once an appropriate affidavit was filed) would be addressed to the statements made by Defendant at ECMC. In other words, Magistrate Judge Scott concluded that a hearing was unnecessary with respect to the issues raised by Defendant concerning the warrantless search of the garage, the alleged consent to search the home given by Defendant's mother's husband, or the searches conducted pursuant to court-issued warrants.

On April 27, 2016, Defendant filed an affidavit in accordance with Magistrate Judge Scott's directions. (Dkt. 56). In that affidavit, Defendant detailed the facts surrounding the interviews at ECMC, and he also stated that he adopted the factual allegations set forth in his mother's affidavit of February 24, 2016. (*Id.* at ¶¶ 4–8). Defendant's mother—Linda Ross—had submitted an affidavit attached to Defendant's initial motion papers. (Dkt. 46–1 at 22–23). In that affidavit, Ms. Ross stated, among other things, that she is the sole owner of the property located at 6761 Walmore Road in Wheatfield, New York, and that Defendant has resided with her at that residence since 1974. (*Id.* at 22).

On April 28, 2016, Magistrate Judge Scott issued a Text Order finding that the affidavit filed by Defendant was sufficient to justify a hearing concerning the ECMC interview. (Dkt. 57). The evidentiary hearing went forward on July 20, 2016. (Dkt. 67; *see* Dkt. 68). At the hearing, defense counsel indicated that he intended to supplement his suppression motion with additional documents that he had obtained, and he did so in accordance with the schedule set by Magistrate Judge Scott on September 21, 2016. (Dkt. 70). In that supplemental submission, Defendant contended that although the initial 911 call was made at

pursuant to 28 U.S.C. §§ 636(b)(1)(A)–(B).

(Dkt. 12).

3:38 AM on July 21, 2015, the Erie County Bomb Squad did not arrive until 8:30 AM. (Dkt. 70 at ¶¶ 4, 17; *see also* Dkt. 70–1 at 2–3). Thus, according to Defendant, the alleged exigency justifying the warrantless search of the attached garage was negated by the fact that the Bomb Squad did not arrive at the scene until five hours after the initial explosion. (*See* Dkt. 70 at ¶¶ 26–32).

The Government and Defendant submitted post-hearing briefs concerning the motion to suppress the statements at ECMC on October 25 and 28, 2016, respectively, (Dkt. 80; Dkt. 81), and on November 17, 2016, Magistrate Judge Scott issued the R & R. (Dkt. 82). On December 14, 2016, Defendant timely filed objections to the R & R (Dkt. 86), and the Government timely filed its response on January 4, 2017. (Dkt. 88). Oral argument was held before the undersigned on February 8, 2017, at which time the Court reserved decision. (Dkt. 90).

## DISCUSSION AND ANALYSIS

Pursuant to 28 U.S.C. § 636(b)(1)(B), "a judge may ... designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A).... " 28 U.S.C. § 636(b)(1)(B). This Court made just such a referral to Magistrate Judge Scott to issue proposed findings of fact and recommendations for the disposition of Defendant's dispositive motions. The R & R addresses the many issues raised by Defendant with his omnibus motions. However, the Court finds the factual record is incomplete and a further evidentiary hearing is required, with further proposed findings of fact and recommendations, before a

decision can be rendered with respect to the omnibus motions.

For the reasons described below, the Court refers the case pursuant to 28 U.S.C. § 636(b)(1)(B), to Magistrate Judge Scott to conduct an evidentiary hearing for fact finding and to render a report and recommendation as to: (1) whether Defendant had standing to assert a privacy interest in the detached garage; (2) whether the seizure and warrantless searches of the garage were justified by exigent circumstances, which must necessarily include proposed findings as to when the searches occurred, what exigency (if any) existed at the time, and what evidence was seized and when pursuant to any warrantless search; and (3) whether William Ross's consent to search was valid, and, if so, the timeline for said consent and its scope.

Until this Court receives those further proposed findings of fact and recommendations, it lacks sufficient information to resolve the pending omnibus motions, and, therefore, the time under the speedy trial clock remains excluded pursuant to 18 U.S.C. § 3161(h)(1)(D).

### A. The Standing Issue

■ In response to Defendant's motion seeking to suppress the evidence seized from the warrantless search of the garage, the Government argued that Defendant did not submit sufficient evidence to establish his standing to challenge the search. (Dkt. 47 at 16–19).

Magistrate Judge Scott agreed with the Government, and found that Defendant did not have standing to challenge the search. (Dkt. 82 at 17). Magistrate Judge Scott concluded that because Defendant failed to submit a sworn affidavit attesting to his privacy interest in 6761 Walmore Road, it was unnecessary to hold a hearing as to Defendant's standing. (*Id.*). Magistrate

Judge Scott noted that the only assertion of Defendant's privacy interest in the property was "provided through the motion itself," which was insufficient to create a factual issue as to standing. (*Id.*).

▆▆▆ Fourth Amendment rights attach only to places and things in which the individual challenging the search has " 'an expectation of privacy that society is prepared to consider reasonable.' " *O'Connor v. Ortega*, 480 U.S. 709, 715, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987) (citation omitted); *see, e.g., Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) ("[C]apacity to claim the protection of the Fourth Amendment depends not upon a property right in the invaded place but upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place."). "It has been clear for a generation that 'Fourth Amendment rights are personal rights that may not be vicariously asserted.' " *United States v. Haqq*, 278 F.3d 44, 47 (2d Cir. 2002) (quoting *Rakas*, 439 U.S. at 133–34, 99 S.Ct. 421); *see, e.g., United States v. Osorio*, 949 F.2d 38, 40 (2d Cir. 1991) ("The party moving to suppress bears the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure."). "In evaluating [standing] claims, the court generally considers whether the defendant had any property or possessory interest in the place searched or the items seized." *Osorio*, 949 F.2d at 40. "[A]n evidentiary hearing on a motion to suppress ordinarily is required if 'the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question.' " *United States v. Pena*, 961 F.2d 333, 339 (2d Cir. 1992) (citation omitted). A court may refuse to hold an evidentiary hearing where the defendant fails to pro-

vide factual allegations from a witness with personal knowledge. *See United States v. Gillette*, 383 F.2d 843, 848 (2d Cir. 1967) (upholding the denial of an evidentiary hearing where the affidavit submitted failed to allege personal knowledge); *see, e.g., United States v. Carter*, No. 11-CR-121-A, 2012 WL 4721117, at *2 (W.D.N.Y. Sept. 11, 2012), *report and recommendation adopted*, No. 11-CR-121A, 2012 WL 4713900 (W.D.N.Y. Oct. 3, 2012).

Here, in finding that Defendant failed to establish his standing to challenge the search of the garage, the Magistrate Judge stated that Defendant "never submitted a factual affidavit explaining his privacy interest in the garage," and that the only proffer of such information was in the motion papers. (Dkt. 82 at 17). This conclusion did not take into account Ms. Ross's sworn affidavit, submitted with Defendant's motion papers, and Defendant's later sworn affidavit. (*See* Dkt. 46–1 at 22–23; Dkt. 56). Ms. Ross's affidavit clearly states that Defendant resided at 6761 Walmore Road from 1974 through the date of the incident at issue in these proceedings. (*See* Dkt. 46–1 at 22–23). Defendant later adopted the factual assertions in Ms. Ross's affidavit through a sworn affidavit of his own. (Dkt. 56 at ¶ 8). Ms. Ross's sworn statements were made with personal knowledge of the facts at issue.

Additionally, search warrant application affidavits attached to Defendant's motion papers corroborate that Defendant lived at 6761 Walmore Road and had access to the garage. Niagara County Sheriff's Office ("NCSO") Investigator Williams Evans swore in his state search warrant application that Defendant resided "in the basement of property located at 6761 [Walmore Road]" and that Defendant had "access to the out buildings on the property." (Dkt. 46–2 at 4). Bureau of Alcohol, Tobacco, Firearms and Explosives Special Agent

Paul E. Brostko's affidavit—originally submitted to Magistrate Judge Scott in support of the federal search warrant and also attached to Defendant's motion papers— stated that Defendant "resides" at 6761 Walmore Road and "spends most of his time in his bedroom and garage." (*Id.* at 33; *see, e.g., id.* at 35 (stating that "6761 Walmore Road, Wheatfield, NY, [is] the residence of [Defendant]")).

As the Government argued during the appearance before the undersigned, it certainly would have been clearer if Defendant plainly set forth in his affidavit his claimed privacy interest in the garage. Nonetheless, the record at least establishes a factual issue sufficient to warrant an evidentiary hearing as to whether Defendant had a privacy interest in the garage. The record includes both a sworn affidavit from Defendant (Dkt. 56), and at least one sworn affidavit from a witness with personal knowledge—Ms. Ross (Dkt. 46–1 at 22–23). Defendant's submission of sworn affidavits by witnesses with personal knowledge establishes, at least, that Defendant *could have* had a legitimate expectation of privacy in the garage such that he has standing to challenge the warrantless search therein.

To be clear, Defendant's submissions do not establish, conclusively, that Defendant *did* have a legitimate expectation of privacy in the garage. The garage is detached and, as Defendant argues in his papers, "isolated from the home." (Dkt. 86 at 6). Nonetheless, an evidentiary hearing is required to determine whether Defendant had a legitimate expectation of privacy in the garage, one that society is prepared to recognize as reasonable. *See Osorio*, 949 F.2d at 40.

B. **The Warrantless Search and Seizure of the Garage**

■ "In general, a state actor must obtain a warrant based on probable cause to lawfully execute a search." *Anobile v. Pelligrino*, 303 F.3d 107, 117 (2d Cir. 2002). A warrantless search is *per se* unreasonable, "subject only to a few specifically established and well-delineated exceptions." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (citing *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). "[P]olice officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home." *Kirk v. Louisiana*, 536 U.S. 635, 638, 122 S.Ct. 2458, 153 L.Ed.2d 599 (2002); *see, e.g., United States v. Medina*, 944 F.2d 60, 68 (2d Cir. 1991) ("Warrantless searches and seizures of an individual's home by law enforcement officers are presumptively unreasonable under the Fourth Amendment, unless exigent circumstances exist requiring entry before the officers could obtain a warrant."). "The core question is whether the facts, as they appeared at the moment of entry, would lead a reasonable, experienced officer to believe that there was an urgent need to render aid or take action." *United States v. Moreno*, 701 F.3d 64, 73 (2d Cir. 2012) (quoting *United States v. Klump*, 536 F.3d 113, 117–18 (2d Cir. 2008)). The determination is an objective one, examined in the totality of the circumstances confronting law enforcement at the time of the intrusion. *Id.*

■ The Supreme Court has recognized that an exigency exists when law enforcement are called upon to "assist persons who are seriously injured or threatened with such injury." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006); *see, e.g., Minnesota v. Olson*, 495 U.S. 91, 100, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990) ("[A] warrantless intrusion may be justified by ... the risk of danger to the police or to other

persons inside or outside the dwelling." (citation omitted)); *United States v. Simmons*, 661 F.3d 151, 157 (2d Cir. 2011). An exigency also exists where there is a risk of imminent destruction of evidence. *Stuart*, 547 U.S. at 403, 126 S.Ct. 1943; *see, e.g., In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 157, 168 (2d Cir. 2008).

However, the existence of an exigency is not a free pass for law enforcement to conduct a generalized search of the area for evidence of a crime. *Klump*, 536 F.3d at 118. "Rather, the warrantless search 'must be strictly circumscribed by the exigencies which justify its initiation.'" *Id.* (quoting *Mincey v. Arizona*, 437 U.S. 385, 393, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978)).

> Where officials enter private property to fight a fire, therefore, the scope of the warrantless search is limited to that reasonably necessary to extinguish the blaze, determine the cause and origin of a fire, and ensure against rekindling. However, any contraband or other evidence of a crime seen in plain view during such a circumscribed search may be used to establish probable cause to obtain a warrant to conduct a broader search.

*Id.* (internal citations omitted); *see also Michigan v. Tyler*, 436 U.S. 499, 509–10, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978) (holding that the exigency created by a fire does not end "with the dousing of the last flame," but extends for a reasonable time thereafter to allow for an immediate investigation into the cause of the fire, to prevent recurrence, and/or to preserve evidence). A warrantless search is no longer permissible once the exigency ends. *Mincey*, 437 U.S. at 392–93, 98 S.Ct. 2408.

The Fourth Amendment also prohibits unreasonable seizures. U.S. Const. amend. IV. "A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). As explained by the Supreme Court:

> Different interests are implicated by a seizure than by a search. A seizure affects only the person's possessory interests; a search affects a person's privacy interests. Recognizing the generally less intrusive nature of a seizure, the [Supreme] Court has frequently approved warrantless seizures of property, on the basis of probable cause, for the time necessary to secure a warrant, where a warrantless search was either held to be or likely would have been held impermissible.

*Segura v. United States*, 468 U.S. 796, 806, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984) (internal citations omitted).

Here, according to the unsworn field case report of the first officer on the scene—NCSO Lt. Broderick—he responded to a 911 call from Ms. Ross in which she stated that there was a fire causing an injury. (Dkt. 46–1 at 25). When Lt. Broderick arrived, Ms. Ross told him that an explosion had occurred "towards the back of the garage," and that Defendant had suffered a severe injury. (*Id.*). The garage, at that moment, was "full of smoke." (*Id.*).

Upon entry, Lt. Broderick purportedly found "a work boot with massive damage, and [ ] what appeared to be evidence of an explosion." (*Id.*). The record is unclear as to what, specifically, Lt. Broderick determined was "evidence of the explosion," but he did state that it was clear "from the amount of smoke and explosion" that Defendant's statements that he had just been "messing around with black powder and his muzzle loader" were facetious. (*Id.*). Lt. Broderick quickly retreated after seeing

the "evidence of the explosion," and prevented anyone other than emergency responders from entering the garage. (*Id.*).

The circumstances likely justified seizure of the garage. Lt. Broderick permitted only emergency responders to enter the garage, and Ms. Ross was prevented from closing the garage door. (Dkt. 46–1 at 25). This was an interference with Ms. Ross's possessory right by a government actor, and, thus, a seizure. *See Jacobsen*, 466 U.S. at 113, 104 S.Ct. 1652. However, assuming, without deciding, that the facts gleaned from his unsworn statements are true, the information known to Lt. Broderick at the time he retreated from the garage—including the 911 call from Ms. Ross stating that there had been an explosion causing significant injury to Defendant, Lt. Broderick's observation of Defendant's injury, and Lt. Broderick's observations of evidence of an explosion—could have established probable cause to seize the garage. *See Segura*, 468 U.S. at 806, 104 S.Ct. 3380.

In addition, Lt. Broderick's observations, regardless of Defendant's exhortations to stay out of the garage and away from his "stuff" (*see id.*), could justify warrantless entry. *See United States v. Evans*, 549 Fed.Appx. 397, 403 (6th Cir. 2013) (holding a warrantless search constitutional even though the defendant attempted to refuse law enforcement entry because exigent circumstances required immediate action by police); *United States v. Stewart*, 528 Fed.Appx. 879, 882 (10th Cir. 2013) (same). A law enforcement officer could, upon being told of an explosion and seeing a structure full of smoke, reasonably determine that urgent action needed to be taken to prevent further explosions or reigniting of the fire. *See Tyler*, 436 U.S. at 509–10, 98 S.Ct. 1942. The law would not allow a general search of the garage for evidence of *any* crime, but the exigent circumstances here, if established, may have permitted Lt. Broderick to enter the garage, without a warrant, to determine the cause of the explosion and fire, even though there was no fire visible at the time he arrived at 6761 Walmore Road. *See Klump*, 536 F.3d at 118 (allowing warrantless entry into a warehouse when there was a reasonable belief that there was a fire inside, even though the officers did not see actual fire or smoke before entry).

However, as defense counsel pointed out during oral argument before the undersigned, the Government has not submitted a single sworn affidavit concerning the actions of Lt. Broderick or others. Therefore, the Court cannot find, based on the record before it, that Lt. Broderick's initial search and seizure of the garage was constitutional. This is particularly the case given that the Government bears the burden "to demonstrate that the 'exigencies of the situation' made a warrantless search 'imperative.'" *United States v. Atkinson*, 653 F.Supp. 668, 675 (S.D.N.Y. 1987) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 454–55, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)).

Moreover, even if the Court could make such a finding, a question remains: When did the exigency end such that a warrant was required to re-enter and search the garage? The log attached to Defendant's supplemental submission (Dkt. 70–1 at 2–3) appears to indicate the timeline for the various arrivals of different law enforcement agencies to the scene, but, again, the log is in an unsworn form, and further explanation is needed as to what was occurring and what was seized during the various times recorded in that log. As best the Court can piece it together, after Lt. Broderick retreated, other officers entered the garage and found "a possible pipe bomb made from a flashlight." (*See* Dkt. 47–2 at 3). However, from a review of the

times on the log, it appears that this did not occur until sometime after 8:15 AM. (Dkt. 70–1 at 2). It also appears that the Bomb Squad arrived at around 8:30 AM. (*Id.*).

Defendant argues that law enforcement had the opportunity to apply for and receive a warrant to re-enter the garage after Lt. Broderick retreated and restricted access, and that the failure to do so violated Defendant's Fourth Amendment rights. (Dkt. 86 at 5–6). Law enforcement can, following a fire, enter a building without a warrant to determine the cause of the fire and to "ensure against rekindling." *Klump*, 536 F.3d at 117. The Supreme Court has upheld a warrantless search to investigate the cause of a fire which occurred six hours after the fire was extinguished. *Tyler*, 436 U.S. at 501–03, 510, 98 S.Ct. 1942. Such a delay was "reasonable" and did not require a warrant. *Id.* at 510, 98 S.Ct. 1942; *see, e.g. United States v. Callabrass*, 607 F.2d 559, 563 (2d Cir. 1979) (upholding a three-hour delay between a fire's end and a warrantless search as reasonable).

On the record before this Court, it cannot be determined whether there was a reasonable delay between the explosion and the warrantless searches. It is certainly possible, given the timing known to the Court, that the warrantless searches of the garage could have occurred within a reasonable time after the end of the fire. But this Court will not presume, without further evidence in the record, that any of those warrantless searches occurred within a reasonable time. A further evidentiary hearing is required. *See United States v. Mathurin*, 148 F.3d 68, 70 (2d Cir. 1998) (finding that a district court abused its discretion in refusing to hold an evidentiary hearing where there was an unresolved issue of fact).

During such evidentiary hearing, further information regarding the potential for danger from the explosives must also be elicited. The Magistrate Judge found that there were continuing exigent circumstances solely due to the presence of explosives. (*See* Dkt. 82 at 19–20). The mere presence of explosives is not dispositive in determining that an exigency exists or continues. Exigent circumstances exist "only if there is a reasonable belief in the defendant's destructive intent or imminent danger posed by the explosives." *Atkinson*, 653 F.Supp. at 676; *see, e.g., United States v. Evans*, 629 F.Supp. 1544, 1553 (D. Conn. 1986). Where explosive materials pose a continuing danger to those in the vicinity, the exigency continues such that a warrant is not required to render the premises safe. *Atkinson*, 653 F.Supp. at 676. During that time, law enforcement may lawfully enter and search the premises, and can seize evidence in plain view. *See Bradway v. Gonzales*, 26 F.3d at 319–20.

Here, Defendant had left the garage before Lt. Broderick arrived, and was later transported to ECMC, thereby completely removing him from the scene. (Dkt. 46–1 at 25). There is no information in the record which describes any present destructive intent by Defendant at the time of the warrantless searches. Further, it is unclear whether there was any danger posed by the explosive devices after Lt. Broderick retreated. Defendant argues that there was no continuing danger to those in the vicinity because "the detached garage here was isolated from the home and not in proximity to any other houses." (Dkt. 86 at 6). The Government did not argue, either in its original motion papers or its response to Defendant's objections to the R & R, that the explosives created a continuing danger in any way other than their mere presence. (*See* Dkt. 47 at 17–19; Dkt. 88 at 7–9). The record does not contain any information as to the existence of a con-

tinuing danger to those in the vicinity because no evidentiary hearing was held to elicit such testimony.

As a result, the matter is referred to Magistrate Judge Scott to conduct an evidentiary hearing, and make proposed findings of fact and recommendations consistent with this Decision and Order.

## C. Voluntary Consent to Search

In his initial motion papers, Defendant challenged Mr. Ross's consent to search the house. (Dkt. 46 at 18–19). The Magistrate Judge did not address whether the consent was valid, and, if so, whether that obviated the need for a state search warrant. (*See* Dkt. 82). Magistrate Judge Scott only mentioned the consent in deciding whether such consent would have affected the decision to issue the warrant. (*See id.* at 23–24). Further information regarding the consent should be elicited during the evidentiary hearing.

Defendant argued that Mr. Ross could not consent to a search of the property, including the residence, because Ms. Ross—the "sole owner of the property"—did not consent. (Dkt. 46 at 18–19). Ms. Ross was present at the time Defendant objected to an inspection of his "stuff," and later ratified the objection by attempting to close the garage. (*Id.* at 19). Additionally, Defendant argues that the scope of the search went beyond the consent, which was limited to the "'bedrooms/basement area' of the residence." (*Id.* at 18–19 (citation omitted)). These issues, according to Defendant, are sufficient to require suppression of any evidence seized pursuant to the consent. (*Id.* at 19).

■■■■ A warrant is not required when law enforcement obtain voluntary consent to a search from an occupant who shares, or is reasonably believed to share, an area in common with the person who later objects to the use of evidence gath-

ered. *Illinois v. Rodriguez,* 497 U.S. 177, 188–89, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). "[A] third party has authority to consent to a search of a home when that person (1) has access to the area searched and (2) has either (a) common authority over the area, (b) a substantial interest in the area, or (c) permission to gain access to the area." *Moore v. Andreno,* 505 F.3d 203, 208–09 (2d Cir. 2007). Although a co-occupant can override the otherwise valid consent of the third party, the objecting party must be physically present to so object. *Georgia v. Randolph,* 547 U.S. 103, 106, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006). After the objecting party has been removed from the location—even if police remove the objector—later consent from a physically present third party is valid and no warrant is required to effectuate the search. *Fernandez v. California,* —— U.S. ——, 134 S.Ct. 1126, 1130, 188 L.Ed.2d 25 (2014).

Here, Mr. Ross, a co-occupant of 6761 Walmore Road with Ms. Ross and Defendant, had access to the residence and appeared to have authority over the area. Mr. Ross signed a "Voluntary Consent to Search" form on July 21, 2015. (Dkt. 46–2 at 23). Although the consent form requires the signatory to state both the date and the time at which the form was signed, the form signed by Mr. Ross does not include the time at which it was signed. (*See id.*). The consent form noted that Mr. Ross was not required to allow the search, and stated that the permission was granted "freely and voluntarily." (*Id.*).

Both Defendant and Ms. Ross objected to a search of the garage while they were still at scene. However, it appears as though they were removed from the property by law enforcement *before* Investigator Evans arrived at 6761 Walmore Road. (*See* Dkt. 46–2 at 3). The log indicates that

Investigator Evans was present at the scene from 8:00 AM until 3:30 PM. (Dkt. 70–1 at 2). At some point during that time frame, Investigator Evans apparently received consent from Mr. Ross to search. Thus, it appears as though this may be a situation where an objecting party was removed from the property, after which voluntary consent was given by a third party. *See Fernandez*, 134 S.Ct. at 1130. However, the plain language of the consent form illustrates that Mr. Ross did not consent to a search of the garage; he consented only to a search of the bedrooms and basement of the residence.

In making the Court's ultimate determination with respect to Defendant's omnibus motions, it would be useful if a further factual record is developed as to the timeline for Mr. Ross's consent, the scope of that consent, and what evidence was seized pursuant to that consent, with a recommendation as to whether Mr. Ross's consent to search was valid. Therefore, the matter is referred to Magistrate Judge Scott to conduct an evidentiary hearing.

### CONCLUSION

For the foregoing reasons, the Court refers the matter to the Magistrate Judge to hold an evidentiary hearing and to issue proposed findings of fact and recommendations consistent with this Decision and Order.

SO ORDERED.

