STATE OF MAINE
KENNEBEC, SS.

SUPERIOR COURT
CRIMINAL ACTION
Docket No. CR-16-222

STATE OF MAINE

v.                                                          **ORDER**

LYANNE LEMEUNIER-FITZGERALD,

        Defendant

Before the court is defendant's motion to suppress evidence of a blood sample obtained from the defendant on the basis that any consent given by the defendant was not in fact voluntarily given, was the result of duress or coercion, expressed or implied, and was otherwise obtained without a warrant in violation of her Fourth Amendment rights.

At the motion hearing, it was stipulated by the parties that on December 21, 2015, a police officer had probable cause to believe the defendant was operating a motor vehicle while under the influence of an intoxicant. It was further stipulated that a blood sample was taken without a warrant and there were no exigent circumstances. Finally, it was stipulated that the defendant agreed to submit to a blood test after being read the Maine implied consent law. In support of defendant's motion, she argues the findings of *Birchfield et al. v. North Dakota*, 579 U.S. ___, 136 S.Ct. 2160, (2016)

An officer with the Augusta Police Department was called to the parking lot at Hannaford on December 21 at 6:10 PM where he found an intoxicated female attempting to operate a motor vehicle. He noted the vehicle had pulled out of a parking space and he identified the defendant. He noted that her eyes were glassy, she had slurred speech and she presented an odor of an alcoholic drink. At the time the officer attempted to arrest the defendant, she grabbed a pill bottle and put the contents in her mouth. At that point, the officer sent for a Rescue Team and she was taken to the hospital.

After emergency procedures were taken by hospital staff and the defendant was put in a room, the officer met with her. The officer testified that the defendant was calm at the hospital. He advised her that he thought she was attempting to operate a vehicle while under the influence. He asked the defendant to submit to a blood draw to determine the presence of alcohol in her blood. She signed a medical waiver form.

A form titled "Law Enforcement Officer's Report Relating to Implied Consent" was admitted as a State's exhibit. Relevant to defendant's motion to suppress, reference was made to the third sentence in paragraph number 3 of the form which reads: "If you are convicted of operating while under the influence of intoxicating liquor or drugs, your failure to submit to a chemical test will be considered an aggravating factor at sentencing, which in addition to other

penalties, will subject you to a <u>mandatory minimum period of incarceration</u>." (emphasis supplied).

It is not disputed that the defendant was in the custody of the officer both at the scene and in the hospital. While he had removed the handcuffs from the defendant at the scene upon the arrival of Rescue, it was clear that the defendant was not free to leave the hospital without the officer's permission.

*Birchfield v. North Dakota*, a decision of the United States Supreme Court, dated June 23, 2016, addresses the issue as follows:

> In the past, the typical penalty for noncompliance was suspension or revocation of the motorist's license. The cases now before us involve laws that go beyond that and make it a crime for a motorist to refuse to be tested after being lawfully arrested for driving while impaired. The question presented is whether such laws violate the Fourth Amendment's prohibition against unreasonable searches.

579 U.S. ___, 136 S.Ct. 2160, (2016). The Supreme Court has joined for its decision the cases of *Danny Birchfield, petitioner v. North Dakota*, docket 14-1468; *William Robert Bernard Jr., petitioner, v. Minnesota*, No. 14-1470; and *Steve Michael Beylund, petitioner v. Director of North Dakota Dept. of Transp.*, No. 14-1507.

In the *Birchfield* case, a State trooper arrested Mr. Birchfield for driving while impaired, gave the usual *Miranda* warnings, and advised him of his obligation under North Dakota law to undergo the BAC testing by a blood test. The officer further informed him, as North Dakota law requires, that refusing to take

the test would expose him to criminal penalties as described by the court. On his conditional plea, Birchfield argued that the Fourth Amendment prohibited criminalizing his refusal to submit to the test.

In the *Bernard* matter, the officers arrested Mr. Bernard for driving while impaired. At the police station, the officers read him Minnesota's implied consent advisory, which, like North Dakota's, informs motorists that it is a crime under State law to refuse to submit to a legally required BAC test. Bernard refused to take a breath test.

In the *Beylund* case, the officer arrested Mr. Beylund for driving while impaired and took him to a nearby hospital. There he read the defendant North Dakota's implied consent advisory, informing him that a test refusal in these circumstances is itself a crime. Unlike Birchfield and Bernard, Beylund agreed to have his blood drawn and analyzed.

The United States Supreme Court specifically granted *certiorari* in all three cases and consolidated them for argument in order to decide whether the motorists lawfully arrested for drunk driving may be convicted of a crime or otherwise penalized for refusing to take a warrantless test measuring the alcohol in their blood stream.

Petitioners Birchfield and Beylund were told that they were obligated to submit to a blood test whereas petitioner Bernard was informed that a breath test

was required.  Birchfield and Bernard each refused to undergo a test and were convicted for the refusals.  Beylund complied with the demand for a blood sample, and his license was suspended in an administrative proceeding based on test results that revealed a very high blood alcohol level.  All three petitioners defended on the proposition that the criminal law ordinarily may not compel a motorist to submit to the taking of a blood sample or to a breath test unless a warrant authorizing such testing is issued by a magistrate.

In its opinion, the Court notes that the Fourth Amendment prohibits "unreasonable searches."

> The right of the people to be secure in their person,  houses, papers, and    effects, against unreasonable searches and seizures, shall not be violated…

Id, 135 S.Ct at 2173

After discussing the history of the issue of warrantless searches incident to arrest, the Court concludes

> Absent more precise guidance from the founding era we generally determine whether to exempt a given type of search from the warrant requirement 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy, and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.

Id., 136 S.Ct. at 2176, citing *Riley v. California,* 573 U.S. _____(2014)

The Court went on to distinguish between a breath test which "does not implicate significant privacy concerns," from blood tests which it states are a different

matter. *Citing Skinner v. Railway Labor Executives Ass'n*, 489 U.S. 620, 626, (1989).

The Court proceeds on to describe the steps that the states and federal government have taken to deter potential drunk drivers and reduce alcohol related injuries. The Court notes that

> the laws at issue in the present cases -- which make it crime to refuse to submit to a BAC test -- are designed to provide an incentive to cooperate in such cases, and we conclude that they serve a very important function.

*Birchfield,* 136 S.Ct. at 2179

After assessing the effect of BAC tests on privacy interests and the need for such tests, the Court concludes that the Fourth Amendment permits warrantless breath tests incident to arrests for drunk driving, noting that the impact of breath tests on privacy is slight and the need for BAS(sic?) testing is great.

The Court goes on to say, "We reach a different conclusion with respect to blood tests. Blood tests are significantly more intrusive, and their reasonableness must be judged in light of the availability of the less invasive alternative of a breath test." Id., at 2184

Finally, the Court notes "borrowing from our Fifth Amendment jurisprudence, the United States suggests that motorists could be deemed to have consented to only those conditions that are 'reasonable' and that they have a

'nexus' to the privilege of driving and entail penalties that are proportional to severity of the violation (citation omitted.) But in the Fourth Amendment setting, this standard does not differ in substance from the one that we apply, since reasonableness is always the touchstone of Fourth Amendment analysis, see *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). And applying this standard, we conclude that motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." *Birchfield*, 136 S.Ct. at 2186

Distinguishing Beylund's case, the petitioner was not prosecuted for refusing a test as he submitted to a blood test after police told him that the law required a submission. Based upon the test results, his license was then suspended and he was fined in an administrative proceeding. The Court remanded the matter to the State of North Dakota Supreme Court to determine the totality of the circumstances and to reevaluate Beyland's consent.

Birchfield was found to be threatened with an unlawful search and his conviction was reversed. However, in Bernard, the criminal prosecution for refusal of a breath test was found not prohibited by the Fourth Amendment.

In the present case, it is the defendant's position in her motion to suppress that the language in the implied consent form that indicates a failure to comply with the duty to submit to the chemical test would subject her "to a mandatory minimum period of incarceration" upon conviction, creates a penalty akin to a

crime and therefore prohibits a blood test without a warrant. She relies on the language found in *Birchfield* that the Court sought to decide whether a motorist lawfully arrested for drunk driving may be convicted of a crime "or otherwise penalized" for refusing to take a warrantless test measuring the alcohol in their blood stream. She argues that the mandatory minimum period of incarceration is of sufficient penalty to remove the circumstance from implied consent and to constitute a threat of a crime for refusal to submit to the invasive blood test.

It is not a separate and distinct crime under Maine law to refuse to submit to a test for alcohol level through blood, breath, or urine. 29-A M.R.S. § 2521(3), Neither a refusal to submit to a test nor a failure to complete a test may be used for a license suspension, as evidence at trial or an aggravating factor in sentencing unless the person has first been told that the refusal or failure will, upon conviction of operating under the influence create a mandatory minimum period of incarceration. 29-A M.R.S. § 2411(5).

*Birchfield* does not stand for the proposition that "otherwise penalized" includes an aggravating factor upon conviction of the underlying crime of operating a motor vehicle while impaired. It makes clear that a State may create a crime for refusal of a breath test because of the reasonableness of a non-intrusive test of one's exhaled breath. A State may not provide a crime for the refusal to take

a sample of blood from a suspected impaired driver pursuant to the Fourth Amendment.

For the reason stated above, the defendant's motion to suppress is DENIED.

DATED: August 22, 2016

Donald H. Marden
Superior Court Justice