J-S20041-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| WARREN HAND | No. 2579 EDA 2016 |

Appeal from the Order July 13, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0012187-2015

BEFORE: BOWES, J., OTT, J. AND FORD ELLIOTT, P.J.E.

DISSENTING MEMORANDUM BY BOWES, J.: **FILED NOVEMBER 27, 2017**

I would reverse the order granting suppression. I would hold that Officer James Crown was permitted to conduct a warrantless search of the closet in order to investigate potential danger to third parties as an application of exigent circumstances, resulting in a valid seizure of the firearm under the plain view doctrine. Therefore, I respectfully submit this dissent.

The facts are relatively straightforward. On June 19, 2015, at approximately 12:10 a.m., Philadelphia Police Officer James Crown and his partner, Officer Donald Vandemay, were directed to respond to a particular residence due to a report of a man with a gun. When they arrived, the front door was open, but was immediately shut by an unknown person when the officers exited their vehicle. Officer Crown heard males yelling inside the

home and his attention was drawn to a broken window, with the drapes billowing. He brushed the curtain aside and observed two men, Appellee Warren Hand and Nasir Lewis, standing by a bedroom door. Appellee had a firearm in his hand. Officer Crown announced his presence, and Appellee retreated into a bedroom and shut the door. Lewis was ordered outside, and he complied.

Officer Crown opened the bedroom door, removed Appellee, who no longer possessed a firearm, and turned him over to his partner. Officer Crown then reentered the home, and searched a closet in the bedroom from which Appellee was apprehended. He observed a firearm, which he seized. The trial court granted Appellee's motion to suppress the firearm, and the Commonwealth appealed.

The learned Majority, like the trial court, limits its analysis of the closet search to **Maryland v. Buie**, 494 U.S. 325 (1990), wherein the United States Supreme Court established when police officers may perform a "protective sweep" as a search incident to an arrest. Therein, police officers were serving an arrest warrant for Buie. Once inside Buie's home, an officer called down basement steps, and Buie responded. Buie complied with the order to come upstairs, where he was arrested, searched, and handcuffed, thereby completing the warrant's purpose. **Id**. at 328. Nevertheless, another officer "entered the basement 'in case there was someone else' down there." **Id**. at 328 (citation omitted). He seized evidence and the trial court denied Buie's

motion to suppress. The Court of Appeals of Maryland reversed, holding that the officers were required to establish probable cause of a "serious and demonstrable potentiality for danger" to justify the warrantless search. *Id*. at 329 (citation omitted).

The High Court reversed. First, the Court noted that the officers would have been permitted, prior to arresting Buie, to enter the basement. Once apprehended, however, the reason for the entry into the home was complete and the arrest warrant could not justify a further search of the home. *Id*. at 333. The Court nevertheless concluded that the officers were not *per se* barred from searching the basement:

> We also hold that as an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched. Beyond that, however, we hold that there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.

*Id*. at 1098. Thus, the warrantless search in *Buie* was reasonable due to the interest in officer safety, and permitted a search of the immediate area surrounding the arrestee with no further justification whatsoever. "We are quite sure, however, that the arresting officers are permitted in such circumstances to take reasonable steps to ensure their safety after, and while making, the arrest. That interest is sufficient to outweigh the intrusion such

procedures may entail." *Id*. at 334. The Court remanded for further proceedings.

However, the Fourth Amendment analysis alters with respect to spaces not immediately adjoining the place of arrest, and, concomitantly, changes when the officer is outside of the home. At this juncture, I now address the trial court's application of *Buie*, which is adopted by the Majority.

> Here, the re-entry of the house and the search of the bedroom clearly did not fit within the "first level" described above because [Hand] and Lewis were in custody outside the property. They no longer posed a threat to the officers and others present at the time and the bedroom and the closet were not locations from which [Hand] or Lewis could launch an attack or obtain a weapon given that neither man was in close proximity to those locations.
>
> Under the "second" level, Officer Crown was not justified in re-entering the residence and walking into the bedroom because he did not articulate specific facts to justify a reasonable belief that someone was in the bedroom who posed a danger to the police or others. According to Officer Crown, he re-entered the house and the bedroom "to check the bedroom to secure it for any other people that are in there." The officer, however, had no basis to do so because when he moved the curtain and looked into the residence, he only saw [Hand] and Lewis enter the bedroom and only [Hand] and Lewis exited the bedroom when he ordered those inside to exit it. There was no evidence presented indicating that anyone else was inside the bedroom or that, if there was, that person or persons posed a threat to the police or others. Thus, because both [Hand] and Lewis were in custody outside the residence and there was no evidence presented indicating that someone who posed a threat may have been in the bedroom, there was no remaining exigency that could justify the general exploratory search of the bedroom.

Trial Court Opinion, 11/6/16, at 2 (citation to transcript omitted).

I agree that re-entry into the home after Appellee was arrested is difficult to justify under a pure "officer safety" rationale as expressed in **Buie**. Once Officer Crown escorted Appellee outside of the home, he could have refrained from reentering the bedroom area. [1]

However, while **Buie** tells us that an officer may search the closet of the area near the arrestee for safety as a matter of Fourth Amendment **sufficiency**, it does not follow that an officer safety rationale is the only condition justifying this search. The Commonwealth argued that exigent circumstances justified the reentry. "Officer Crown checked the bedroom to ensure that no one else who might pose a threat or require medical attention was in that room." Commonwealth's brief at 12.[2] I agree with the

_____

[1] **Buie** would permit the challenged search had Officer Crown arrested Appellee in the bedroom and immediately searched the closet. The opinion explicitly referenced nearby closets as an area falling within the protective sweep. "We also hold that as an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, **look in closets and other spaces immediately adjoining the place of arrest** from which an attack could be immediately launched." **Maryland v. Buie**, 494 U.S. 325, 334 (1990) (emphasis added).

[2] The Commonwealth's argument interchangeably suggests that Officer Crown was permitted to enter the closet to search for other perpetrators, *i.e.* investigation of an ongoing crime, and search for persons that might require aid, *i.e.* potential victims trapped in the home. The exigent circumstances rationale encompasses elements of both in this situation, where the responding authorities do not know if other suspects or potential victims were on-site. Officer Crown's testimony alluded to the same:

Commonwealth, and would hold that the trial court misapplied the law and reverse.

The emergency aid doctrine is summarized as follows:

> "[W]arrants are generally required to search a person's home or his person unless 'the exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Mincey v. Arizona*, 437 U.S. 385, 393-394, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978).
>
> One exigency obviating the requirement of a warrant is the need to assist persons who are seriously injured or threatened with such injury. "'The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency.'" *Id.*, at 392, 98 S.Ct. 2408 (quoting *Wayne v. United States*, 318 F.2d 205, 212 (C.A.D.C.1963) (Burger, J.)); see also *Tyler*, *supra*, at 509, 98 S.Ct. 1942. Accordingly, law enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury. *Mincey, supra*, at 392, 98 S.Ct. 2408; see also *Georgia v. Randolph, ante*, at 118, 126 S.Ct. 1515, 1525, 164 L.Ed.2d 208 ("[I]t would be silly to suggest that the police would commit a tort by entering ... to determine whether violence (or threat of violence) has just occurred or is about to (or soon will) occur").

---

. . . . So once Lewis comes out, I go in. I yell at the door two or three times for him to come out. I obviously didn't know his name at the time. I yell and Hand comes out. I take him out front. I give him to my partner. At this time Highway Patrol had showed up. With the yelling and screaming, they had given us an assist. So a couple of units showed up**. I hand this defendant off to Officer Vandermay. I go back in to check the bedroom to secure it for any other people that are in there.**

N.T., 5/26/16, at 15-16 (emphasis added).

*Brigham City, Utah v. Stuart*, 547 U.S. 398. 403-04 (2006) (alterations in original).

*Stuart* and *Commonwealth v. Potts*, 73 A.3d 1275 (Pa.Super. 2013), which applied the emergency aid doctrine, are instructive. In *Stuart*, four police officers responded to a home at approximately 3:00 a.m. due to a complaint of a loud party. The officers heard shouting from inside, and went down the driveway to investigate. Through a screen door, they saw multiple adults trying to subdue a juvenile male. The juvenile broke free and struck one of the adults in the face, causing the victim to spit blood in a nearby sink. At this point, officers entered the home. The defendants sought to suppress all evidence obtained following entry, arguing that the warrantless search was unreasonable. The Supreme Court disagreed, finding that the entry "was plainly reasonable under the circumstances."

> In these circumstances, the officers had an objectively reasonable basis for believing both that the injured adult might need help and that the violence in the kitchen was just beginning. Nothing in the Fourth Amendment required them to wait until another blow rendered someone "unconscious" or "semi-conscious" or worse before entering. The role of a peace officer includes preventing violence and restoring order, not simply rendering first aid to casualties; an officer is not like a boxing (or hockey) referee, poised to stop a bout only if it becomes too one-sided.

*Id*. at 406 (citations omitted).

In *Potts*, two police officers were dispatched by 911 to a home for reported domestic dispute. Upon arrival, they heard screaming and yelling from the second floor apartment and began knocking on the door. The yelling

stopped, and after approximately thirty seconds Potts's fiancée, Ms. Young, opened the door. She was crying and her clothes were disheveled. Potts ran into a bedroom. At that point, the officers entered the home and began to ask Ms. Young questions. Shortly thereafter, Potts exited the bedroom. One of the officers entered the bedroom to conduct a protective sweep and observed marijuana in plain view.

Therefore, two searches were at issue: The initial entry into the home, and the search of the bedroom. With respect to the initial search, we held that the emergency aid doctrine applied, due to the fact that the officers were responding to a 911 call for a domestic dispute, heard screaming, and the appearance of Ms. Young. We concluded that "the totality of the circumstances justified the police officers' reasonable belief that they needed to enter Appellant's apartment to ensure that Ms. Young was not in danger or in need of immediate aid." *Id*. at 1281 (citations omitted). With respect to the second search of the bedroom, we applied *Buie* and determined that the officers possessed reasonable suspicion that the bedroom harbored an individual posing a danger, as Potts had not yet been arrested at the time of the sweep.

The Majority distinguishes *Potts* by pointing out that Potts and Ms. Young remained inside the residence when the bedroom sweep occurred. Respectfully, I believe that distinction is of no moment, as the emergency aid doctrine, not a protective sweep as an incident to an arrest, justified the

search herein. **Potts**'s application of **Buie** to the bedroom search, as opposed to emergency aid principles, is unsurprising as **Potts** involved investigation of a domestic disturbance, corroborated when Ms. Young answered the door and appeared to be in distress. Therefore, the officers in **Potts** had no reason to suspect any other type of ongoing crime; moreover, they were speaking to the probable victim.

In contrast, we must consider the information known to Officer Crown when he investigated the instant report. The officers arrived shortly after midnight, the front door was open, and an actor slammed the door shut as the officer exited his vehicle. A front window of the home was broken, with the drapes blowing out the window. Officer Crown heard arguing from inside and observed two males, Appellee and Lewis, with Appellee holding a gun. These observations corroborated the report of an ongoing crime, and the situation presented itself as a potential armed home invasion involving an unknown number of perpetrators. Moreover, a citizen and/or another culprit could have been hiding in the closet or other area of the structure.[3] To say, as the Majority does, that the search was unreasonable solely because two

---

[3] The Majority accepts that the limited search occasioned by brushing the curtain aside was justifiable to determine if anyone inside was in need of aid, but does not explain why the same logic does not extend to the search of the closet. The Majority apparently relies on the *ex post* knowledge that this was not, in fact, a home invasion as opposed to viewing the objective reasonableness of the police action at the time.

men were already in custody outside of the home ignores the fact that the officers could not know that Appellee and Lewis were the only persons on site, nor could they be expected to know that Appellee was apparently staying at the residence and therefore had a reasonable expectation of privacy.

Under the facts known to the police officers at the time, I would find that there was a compelling government interest in searching for other occupants or perpetrators, thereby permitting the warrantless search even in absence of reasonable suspicion. "It does not meet the needs of law enforcement or the demands of public safety to require officers to walk away from a situation like the one they encountered here." *Michigan v. Fisher*, 558 U.S. 45, 49 (2009) (*per curiam*); *Potts*, *supra* (finding that totality of the circumstances justified entry to ensure that occupant was not in danger).

Finally, I note that the Majority declares its belief that Officer Crown's search was not for safety reasons: "The more reasonable inference is that the officer entered the bedroom to search for the weapon he had seen in Hand's possession." Majority memorandum at 8. Putting aside the fact that this statement is supported by nothing except conjecture, its suggestion that the subjective motivation of Officer Crown is relevant to the lawfulness of the search is incorrect. *Stuart*, *supra*, repeated the general proposition that the subjective motivation of an officer is irrelevant to the reasonableness of a search, and made plain that subjective intent remains irrelevant in the emergency aid context: "It therefore does not matter here-even if their

subjective motives could be so neatly unraveled-whether the officers entered the kitchen to arrest respondents and gather evidence against them or to assist the injured and prevent further violence." ***Stuart***, ***supra*** at 405. Therefore, for the foregoing reasons, I find that the search was reasonable and therefore respectfully dissent.