**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————————

No. 24-10447

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

JESSE RANCE MOORE,

*Defendant-Appellant.*

————————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:22-cr-00079-LAB-JBT-1

————————————————

Before JORDAN, JILL PRYOR, and KIDD, Circuit Judges.

PER CURIAM:

A jury found Jesse Moore guilty of one count of conspiracy to commit robbery, three counts of robbery, and three counts of brandishing a firearm during the commission of a crime of

violence. *See* 18 U.S.C. §§ 1951, 924(c). The charges stemmed from the armed robbery of three pharmacies in Florida.

Mr. Moore argues on appeal that the district court erred by denying his motion to suppress any evidence or statements derived from his encounter with Officer Nigel Elliot. According to Mr. Moore, Officer Elliot conducted an investigatory stop without reasonable suspicion or probable cause. Mr. Moore also contends that the district court erred by denying his motion to suppress any evidence or statements derived from law enforcement officers' search of his property because the "open fields" doctrine has been called into question and he did not consent to a warrantless search. Following a review of the record and the parties' briefs, we affirm.

## I

A ruling on a motion to suppress presents a mixed question of law and fact. *See United States v. Perez*, 443 F.3d 772, 774 (11th Cir. 2006). We conduct plenary review of legal conclusions and clear error review of factual findings, viewing the facts in the light most favorable to the party which prevailed below. *See United States v. Holmes*, 141 F.4th 1183, 1191 (11th Cir. 2025). We generally defer to the credibility determinations of the factfinder unless its understanding of the facts appears to be unbelievable. *See United States v. Holt*, 777 F.3d 1234, 1255 (11th Cir. 2015).

## II

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."

U.S. Const. amend. IV. As relevant here, it shields persons from unreasonable searches and seizures by law enforcement officers under certain circumstances, and subject to certain exceptions. *See Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006).

Evidence obtained through unconstitutional searches and seizures is generally inadmissible. *See Mapp v. Ohio*, 367 U.S. 643, 654–55 (1961). This exclusionary rule extends beyond the direct products of the constitutional violation to the "fruit of the poisonous tree"—evidence that became available only through the exploitation of the police misconduct, rather than through an independent, legitimate search. *See Wong Sun v. United States*, 371 U.S. 471, 487–48 (1963).

## A

We classify encounters between police and citizens as: "(1) police-citizen exchanges involving no coercion or detention; (2) brief seizures or investigatory detentions; and (3) full-scale arrests." *Perez*, 443 F.3d at 777. Police-citizen exchanges, or consensual encounters, do not implicate the Fourth Amendment. *See id.* The standard to determine whether an investigatory stop has occurred is whether, under the totality of the circumstances, an objective, reasonable, innocent person "would feel free to terminate the encounter." *United States v. Knights*, 989 F.3d 1281, 1286 (11th Cir. 2021) (quotation marks omitted). We consider circumstances such as the person's age, education, and intelligence; whether the person's path was blocked by the police; the length of detention and questioning; whether identification was requested; the number

of officers present; the display of weapons; any physical touching of the person by an officer; and the officers' language and tone of voice.  *See Perez*, 443 F.3d at 778.

Following an evidentiary hearing, a magistrate judge concluded that the encounter between Mr. Moore and Officer Elliott was consensual.  *See* D.E. 67 at 2.  The district court later adopted the magistrate judge's report and recommendation.  *See* D.E. 88.

The magistrate judge based his conclusion on the following facts, which he found after determining that Officer Elliott was a credible witness: (1) Officer Elliott—who was wearing a polo with the insignia for the Columbia County Sheriff's Office—was driving on County Road 240 towards Columbia County in an unmarked police vehicle while being on the lookout for a silver or blue-gray Hyundai that might have been involved in a robbery of the North Florida Pharmacy in Fort White, Florida; (2) Officer Elliott saw a car on the north side of the highway that matched the description of the vehicle involved in the robbery; (3) the car was stopped off the road near the entry to an undeveloped and semi-wooded property containing two posts and a cable across the posts; (4) Officer Elliott decided to stop not because of the possible match, but because he thought the couple (a man and a woman) who were standing outside of the car were arguing and he did not want the situation to escalate; (5) Officer Elliott pulled in behind the car, and activated his lights (but not his siren) to let the couple know that he was a law enforcement officer; (6) Officer Elliott placed his police vehicle behind the couple's car, leaving enough room for the car to

24-10447               Opinion of the Court                    5

back out or pull forward by removing the cable across the posts; (7) Officer Elliott stepped out of his vehicle without drawing his weapon and was met by the woman, who told him that the property belonged to her and the man she was with and that they were clearing the property and planting trees; (8) Officer Elliott did not mention the robbery, did not ask the woman any questions about the robbery, and did not ask the woman to call the man (who was Mr. Moore); (9) Officer Elliott got back into his police vehicle and was leaving when Mr. Moore approached him and flagged him down; (10) when Officer Elliott rolled down the window, Mr. Moore told him that he and his companion were planting trees and asked Officer Elliott if he wanted to stay and help them; and (11) Officer Elliott then left without asking the couple for any identification or asking any questions about the robbery. *See* D.E. 67 at 4–7.

We see no error—factual or legal—in the magistrate judge's conclusion that the encounter was consensual. As a result, Officer Elliott did not need reasonable suspicion or probable cause. *See Perez*, 443 F.3d at 777.

Given the facts summarized above, a reasonable person in Mr. Moore's position would have felt free to leave. Indeed, it was Mr. Moore who approached Officer Elliott as he was leaving. For example, we have held that an officer parking his patrol car close to the suspect's car and approaching did not constitute an investigatory stop because the suspect was capable of driving or walking away and the officer did not display weapons, touch the suspect,

6                     Opinion of the Court                  24-10447

issue any commands, or ask for identification.  *See Knights*, 989 F.3d at 1286–87.

Under *Knights*, the encounter here was not an investigatory stop.  Although Mr. Moore argues that Officer Elliott parked his car in such a way that he and his companion were not able to leave, *see* Appellant's Br. at 3, he has not shown that the magistrate judge's findings of fact about the encounter were clearly erroneous.  *See Cooper v. Harris*, 581 U.S. 285, 293 (2017) ("A finding that is 'plausible' in light of the full record—even if another is equally or more so— must govern.") (citation omitted).

**B**

After departing, Officer Elliott called Detective Chad Guery, who had responded to a pharmacy robbery in Fort White, had interviewed pharmacy staff, and had taken down the description of the car that the suspect was driving.  *See* D.E. 67 at 7.  At some point, officers from the Columbia County Sheriff's Office went on Mr. Moore's property—the land where Officer Elliott had met Mr. Moore and his companion—without permission and/or a search warrant.  *See id.* at 2.  Mr. Moore asserts that the officers trespassed on his property to find a trailer and a tag, and used the information they learned to obtain subpoenas and search warrants, which in turn led to evidence creating probable cause to charge him.  *See* Appellant's Br. at 3.

The magistrate judge ruled that the trespass of the officers had "no relevance" because Mr. Moore's property was a semi-wooded and undeveloped lot that did not contain a home or other

structure. The property, the magistrate judge reasoned, could not be considered curtilage and was an "open field" to which a reasonable expectation of property did not attach under *Oliver v. United States*, 466 U.S. 170, 180–83 (1984). *See* D.E. 67 at 2–3.

Again, we conclude that the magistrate judge did not err. Persons have "no reasonable expectation of privacy for activities conducted out of doors, in open fields, except in the areas shielded from view and immediately surrounding the home." *United States v. Taylor*, 458 F.3d 1201, 1208 (11th Cir. 2006) (citing *Oliver*, 466 U.S. at 178). A person's residence and the area immediately surrounding the residence are constitutionally protected spaces, but the Fourth Amendment distinguishes between residences and "open fields." *See Florida v. Jardines*, 569 U.S. 1, 6 (2013). The Fourth Amendment does "not extend protection to open fields, which includes any unoccupied or undeveloped area beyond the immediate domestic establishment of the home." *Taylor*, 458 F.3d at 1208 (quotation marks omitted). Steps taken to protect the privacy of an open field, moreover, do not create an expectation of privacy in that field. *See Oliver*, 466 U.S. at 182 (concluding that fences and "No Trespassing" signs did not create a legitimate expectation of privacy in an open field).

Mr. Moore contends that the "open fields" doctrine set out in *Oliver* has been undermined by more recent Supreme Court cases. *See* Appellant's Br. at 7–8. Whatever the merits of that argument, the Supreme Court has not overruled *Oliver* and we are not at liberty to ignore it. Indeed, one of the cases cited by Mr. Moore

acknowledges the continuing vitality of the "open fields" doctrine. *See Jardines*, 569 U.S. at 6 ("The Fourth Amendment does not . . . prevent all investigations conducted on private property; for example, an officer may (subject to *Katz* [*v. United States*, 389 U.S. 347 (1967)]) gather information in what we have called 'open fields'— even if those fields are privately owned—because such fields are not enumerated in the Amendment's text.").

### III

Mr. Moore's convictions are affirmed.

**AFFIRMED.**