# IN THE COURT OF APPEALS OF IOWA

———————————

No. 25-0074
Filed April 29, 2026

———————————

**State of Iowa,**
Plaintiff–Appellee,
v.
**Dean Norman Swanson,**
Defendant–Appellant.

———————————

Appeal from the Iowa District Court for O'Brien County,
The Honorable David A. Lester, Judge.

———————————

**AFFIRMED**

———————————

Michael J. Jacobsma of Jacobsma Law Firm, P.C., Orange City,
attorney for appellant.

Brenna Bird, Attorney General, and David Banta, Assistant Attorney
General, attorneys for appellee.

———————————

Considered without oral argument
by Greer, P.J., Ahlers, J., and Bower, S.J.
Opinion by Ahlers, J.

1

**AHLERS, Judge.**

Dean Swanson challenges his conviction for failure to affix a drug stamp while possessing forty-two and one-half grams or more of marijuana.[1] He contends the district court erred by denying his motion to suppress evidence law enforcement found in his house while executing a search warrant. He contends the information used to obtain the warrant was obtained by a prior illegal entry into his house in violation of his right to be free from unreasonable search and seizures secured by the Fourth and Fourteenth Amendments of the United States Constitution and article I, section 8 of the Iowa Constitution.

## I.  Factual and Procedural Background

Based on our de novo review, we find the following facts. In January 2024, Swanson had an adult houseguest staying at his home in Sutherland. The houseguest was having marital trouble and confided his troubles to a Sutherland police officer when they encountered each other at a local store. The officer gave the houseguest encouragement. A few days later, struggling with his mental health due to his marriage problems and his mom's passing, the houseguest was "having a mental breakdown every hour" over the course of the evening. He called a therapy hotline and was on that call "most of the night." When he awoke in the morning, he called a suicide hotline, which notified law enforcement. The same officer was dispatched to do a welfare check. The houseguest was still on the phone with

---

[1] *See* Iowa Code § 453B.12(2) (2024) (making it a class "D" felony for a dealer to possess a taxable substance without affixing appropriate stamps); *see also id.* §§ 453B.1(3)(a)(2) (defining "dealer" to include a person who possesses forty-two and one-half grams or more of marijuana), .1(10) (defining "taxable substance" to include marijuana).

the suicide hotline when the officer arrived at Swanson's house where the houseguest was staying.

The officer knocked on the door to the screened porch of the house, and the houseguest came out and spoke to the officer. He confided to the officer that he wanted to run out into traffic and use a knife to hurt himself. Based on the circumstances, the officer and the houseguest agreed that it would be best if the houseguest went to the hospital to be evaluated, and the officer would take him. The houseguest said he wanted to go to the basement to retrieve boots and a coat. Given the houseguest's suicidal ideation, the officer was concerned about leaving him unattended, so the officer asked him if there was anyone else in the house that could retrieve the boots and coat. The houseguest said Swanson was asleep and the houseguest didn't want to awaken him. The officer then told the houseguest that if he went to retrieve his boots and coat, the officer would have to come with him. The officer then followed the houseguest as he walked through the house to the room in the basement where he kept his belongings, gathered his boots and coat, and went back outside. On the trek to the basement and back, the officer smelled marijuana in the house. After exiting the house, the officer immediately took the houseguest to the hospital as agreed.

After taking the houseguest to the hospital, the officer applied for a search warrant for Swanson's house based on the smell of marijuana. The warrant was issued. Execution of the warrant resulted in officers finding marijuana that ultimately led to charges against Swanson.

Swanson sought to suppress the evidence found via execution of the search warrant. He claimed his rights to be free from unreasonable searches and seizures secured by the United States Constitution and Iowa Constitution were violated because the officer who applied for the warrant illegally entered his house without a warrant, so the evidence of the smell of

3

marijuana that supported the warrant application was illegally obtained. The district court denied Swanson's motion to suppress, finding that the officer's original entry into the house was permissible without a warrant because he was undertaking a community caretaking function of providing emergency aid. Swanson appeals.

## II.    Standard of Review

Because Swanson raises a constitutional challenge, our review is de novo. *See State v. Amble*, 22 N.W.3d 265, 270 (Iowa 2025). With de novo review, we independently make factual findings. *Id.* We are not bound by the district court's fact findings, but we give them deference. *Id.*

## III.    Analysis

Swanson claims the officer's initial entry into his house with his houseguest was unconstitutional. Both the Fourth Amendment and article I, section 8 of the Iowa Constitution protect Swanson's right to be secure in his house against unreasonable searches and seizures. *See State v. Abu Youm*, 988 N.W.2d 713, 718 (Iowa 2023). But the right is not absolute, as searches and seizures based on a warrant or an exception to the warrant requirement are not unreasonable. *Id.* The State bears the burden to prove applicability of a warrant exception. *Id.*

Here, the State relies on the emergency aid branch of the community caretaking exception to the warrant requirement. Under the Fourth Amendment, this exception permits an officer to "enter a home without a warrant if [the officer] has 'an objectively reasonable basis for believing that an occupant is seriously injured or imminently threatened with such injury.'" *Case v. Montana*, 607 U.S. ___, ___, 146 S. Ct. 500, 508 (2026) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 400 (2006)). Under article I, section 8 of the Iowa Constitution, the standard is the same except there is the

additional requirement that the State prove "that the officer subjectively intended to engage in community caretaking." *Abu Youm*, 988 N.W.2d at 719 (citation omitted).

Assessing the community caretaking exception involves a three-step process of deciding whether (1) there was a seizure; (2) the police conduct was a bona fide community caretaker activity; and (3) the public need and interest outweigh the intrusion on the citizen's privacy. *Id.* at 718–19. As to the first step, the parties agree that the officer's entry into Swanson's house constituted a temporary seizure of the house. We accept that agreement to conclude that a seizure occurred.

As to the second step, we find the officer was conducting a bona fide community caretaker activity when he entered the house. Specifically, the sole purpose of entry was to ensure that the houseguest did not harm himself. This was a bona fide community caretaker activity in light of the houseguest's threats of suicide made to the suicide hotline operator and his admission to the officer that he was contemplating suicide.

As to the third step, the public need and interest of ensuring the houseguest did not harm himself before the officer could get him to the hospital for evaluation outweighed the harm caused by the intrusion on Swanson's or the houseguest's privacy. *See Case*, 146 S. Ct. at 508 (finding entry into a home to prevent self-harm by an occupant to be reasonable).

Applying this three-step process, we find that the officer's entry into Swanson's house to accompany the houseguest and prevent him from harming himself did not violate the Fourth Amendment. And, as to the Iowa Constitution's added requirement that "the officer subjectively intended to engage in community caretaking," *Abu Youm*, 988 N.W.2d at 719 (citation omitted), we find that requirement met as well. First, the officer's attempt

5

to get someone else in the house to gather the houseguest's boots and coat while the officer and houseguest waited outside amply demonstrates that he was there to help the houseguest and not to get a look around the house. Second, the officer gave the houseguest fair warning that, if he went back in the house to gather his boots and coat, the officer would have to go with him. This gave the houseguest the option of leaving without going back into the house, again demonstrating that it was not the officer's intention to enter the house for anything other than caretaking purposes. Third, once in the house and discovering the smell of marijuana, the officer did not rummage around or begin investigating the smell. Instead, he stayed on his community caretaking mission by doing nothing more than ensuring the houseguest's safety. As such, the officer's entry into Swanson's house did not violate article I, section 8 of the Iowa Constitution.

Finally, we reject Swanson's claim that this was not a true emergency because the houseguest "was not in imminent danger of serious injury or harm." True, the houseguest did not have a gun to his head or a knife to his throat when he answered the officer's knock. But he had just gotten off the phone with the suicide hotline after spending the night on the phone with a twenty-four-hour therapy service, and he admitted to the officer that he was thinking about killing himself and gave specifics about how he intended to do it. Under these circumstances, it was not only reasonable for the officer to stay with the houseguest to ensure he did not harm himself, but we would severely question the officer's judgment had he left the houseguest alone. We have little doubt that, if the officer had let the houseguest go back into the house alone to retrieve his boots and coat and the houseguest had harmed himself, the officer would be criticized for failing to prevent the harm. *See Abu Youm*, 988 N.W.2d at 721 (considering whether officers would be criticized for not entering a property to potentially save a life as relevant to the community caretaking question). As the Supreme Court noted in another

case involving entry of a home to safeguard a person threatening suicide, "The decision of the officers to enter his home to prevent [self-harm]—even at some significant risk to themselves—was (at the least) reasonable. The Fourth Amendment did not require them, as [the defendant] now argues, to leave him to his fate." *Case*, 146 S. Ct. at 508.

After our de novo review, we find that the district court got it right in its thorough, well-reasoned ruling denying Swanson's motion to suppress.[2] Accordingly, we affirm.

**AFFIRMED.**

---

[2] We note an issue not raised by either party. Even if we had agreed with Swanson that the officer's original entry into the house was unlawful, we question whether we could grant the relief he requests of suppressing the evidence found by execution of the search warrant. That is because the warrant application is not part of our record, and we would need to review the application's contents to determine whether the warrant issued based only on the smell of marijuana, as Swanson claims. *See State v. Seager*, 751 N.W.2d 204, 211–12 n.5 (Iowa 1997) (noting that the procedure to determine the validity of a warrant when it is issued based on illegally obtained evidence is to excise the tainted information from the application and then determine whether the remaining information in the application establishes probable cause).