05-4809-cr
United States v. Tsekhanovich

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2007

(Argued: September 18, 2007                    Decided: October 24, 2007 )

Docket No. 05-4809-cr

_____

UNITED STATES OF AMERICA,

*Appellee,*

—v.—

VICTOR TSEKHANOVICH,

*Defendant-Appellant.*

_____

B e f o r e :

MINER, CABRANES, and STRAUB, *Circuit Judges.*

_____

　　　　Appeal from a judgment of conviction and sentence entered in the United States District Court for the Eastern District of New York (Carol Bagley Amon, *Judge*), the defendant having been convicted of (1) conspiracy to make false statements in a matter related to health care, to commit mail fraud, and to commit health care fraud, in violation of 18 U.S.C. § 371; (2) making false statements in a matter related to health care in violation of 18 U.S.C. § 1035; and (3) health care fraud in violation of 18 U.S.C. § 1347.
　　　　Affirmed.

_____

　　　　ANJAN SAHNI, Special Assistant United States Attorney (Roslynn R. Mauskopf,

United States Attorney for the Eastern District of New York, Alexander H. Southwell, Special Assistant United States Attorney, Celeste L. Koeleveld, Special Assistant United States Attorney, *of counsel*), Brooklyn, New York, *for Appellee.*

PAUL S. BRENNER, New York, New York, *for Appellant.*

———————

*Per Curiam:*

While serving probation pursuant to a previous conviction in April 2003, Tsekhanovich participated in a separate but similar health care fraud for which he was convicted in the Eastern District of New York (Carol Bagley Amon, *Judge*).[1] Tsekhanovich appeals from the judgment related to the second fraud. This case requires us to determine whether the District Court, in trying Tsekhanovich for that fraud, erred in admitting the testimony of a cooperating witness named Alex Kletselman who alleged that he had conspired to commit both charged and uncharged acts of health care fraud.[2]

At trial, Kletselman testified that he worked at an automotive repair garage in Brooklyn owned by his brother, Igor. He testified that he first met Tsekhanovich in 2001, at which time he learned Tsekhanovich operated a medical clinic in Brooklyn. In addition, Kletselman learned that Tsekhanovich used this entity to complete and submit false or inflated insurance claims on behalf of actual or staged automobile accident victims, including Kletselman himself. Once the Federal Bureau of Investigation ("FBI") discovered the Kletselmans' roles in these fraud conspiracies, the Kletselmans began cooperating with the FBI to gather evidence on their co-

---

[1] A jury in the United States District Court for the Southern District of New York convicted Victor Tsekhanovich, *inter alia*, of participating in a criminal health care fraud conspiracy.

[2] We address the other issues Tsekhanovich raises on appeal in a separate summary order, filed today.

2

conspirators. Specifically, Kletselman and the FBI recorded conversations between Kletselman and Tsekhanovich in which they discussed their respective businesses and the possibility of referring customers to each other in the near future.

On appeal, Tsekhanovich challenges the admission of three portions of the Kletselman testimony. Tsekhanovich argues that the challenged testimony included lay opinion within the meaning of Federal Rule of Evidence 701 and that the District Court erred in admitting this testimony because there was an inadequate foundation that the testimony was "rationally based on the perception of the witness," as required by Rule 701(a).

The first colloquy involved a conversation Kletselman had with Tsekhanovich on October 16, 2003. While serving probation for his first fraud conviction, Tsekhanovich brought his car to Alex Kletselman for repairs. According to Kletselman, Tsekhanovich told him that "his business was very slow," but Tsekhanovich expected to begin "sending [Kletselman] cars for repairs." The government asked Kletselman about his understanding of why Tsekhanovich would send him cars for repair, and Kletselman responded, "Because Victor knew that the repairs will be done well and also that the estimate will be good."

The second colloquy to which Tsekhanovich objects involves an October 25, 2003 conversation in which Tsekhanovich told Kletselman that "his business was slow because he did not have any runners." When asked about his understanding of the term "runners," Kletselman testified that he understood the term to mean individuals who "constantly refer . . . [p]eople who were in accidents."

The third colloquy involved a March 2004 conversation Kletselman had with an individual named Yury Zhukov, one of the co-conspirators in the fraud at issue in this case. In

3

this conversation, Zhukov told Kletselman that Tsekhanovich had sent him to Kletselman and that "he" – presumably meaning Zukhov – wanted a "good estimate" for the car repairs. The government asked Kletselman what he understood to be the meaning of the phrase "good estimate" in this conversation, and Kletselman testified that he understood the phrase to mean an estimate that was "as high as possible."

It does not appear from the record that Tsekhanovich properly objected to the admission of any of the testimony now challenged on appeal. Although we normally review such an unpreserved objection for plain error, *see, e.g.*, *United States v. Feliciano*, 223 F.3d 102, 114-15 (2d Cir. 2000), *cert. denied*, 532 U.S. 943 (2001), here there is no error – let alone plain error – in the District Court's decision to admit such testimony. "We review a district court's decision to admit evidence, including lay opinion testimony, for abuse of discretion." *United States v. Kaplan*, 490 F.3d 110, 117 (2d Cir. 2007). "A district court 'abuses' or 'exceeds' the discretion accorded to it when (1) its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) its decision – though not necessarily the product of a legal error or a clearly erroneous factual finding – cannot be located within the range of permissible decisions." *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 169 (2d Cir. 2001) (footnotes omitted).

We have interpreted Federal Rule of Evidence 701(a) to require that "lay opinion testimony be *both* (a) based on the witness's first-hand perceptions *and* (b) rationally derived from those first-hand observations." *Kaplan*, 490 F.3d at 119 (emphasis in original). In *Kaplan*, we concluded that these requirements were not met because the challenged lay opinion testimony about the defendant's state of mind was based on a single conversation with the

4

defendant and no other first-hand experiences. *Id.* In convicting the defendant of an insurance

fraud similar to the one at issue here, the jury heard testimony about the first time the witness

had "really talked" with the defendant. *Id.* at 117. In this conversation, the defendant told the

witness that he had experience with "these kinds of [medical] cases." *Id.* When asked what he

understood that phrase to mean, the witness responded as follows:

> That he understood that these were car accident cases where people exaggerated their injuries, where it was crucial to have a narrative report that exaggerated the injuries, that these reports were bought for the best of prices to get the best of reports and that you could settle these cases for very good money in a short period of time.

*Id.* On redirect, the witness added that, after hearing the defendant state that he had experience

with "these kinds of cases," the witness believed that the defendant "knew exactly what he was

getting into." *Id.*

The colloquies challenged here are distinguishable from those at issue in *Kaplan* on the

basis of both the foundation for the testimony and the purposes for which the testimony was

offered. In contrast to the single conversation that formed the basis of the extensive lay opinion

testimony challenged in *Kaplan*, Kletselman testified that he had known Tsekhanovich for at

least a few years before the conversations in question. Specifically, Kletselman testified that a

"runner" – defined, by Kletselman, as a "person who organizes . . . staged accidents" –

introduced him to Tsekhanovich in 2001. That year, Kletselman suffered injuries in his leg from

an actual accident – i.e., one that had not been staged – and underwent many unnecessary

procedures at Tsekhanovich's clinic in exchange for $1,000 cash.

Furthermore, the record does not indicate that Kletselman speculated about the general

knowledge or intent of Tsekhanovich. Instead, Kletselman testified only about discrete matters,

such as his understanding of why Tsekhanovich would send him cars. The second colloquy

5

challenged by Tsekhanovich does not even pertain to Tsekhanovich's state of mind; rather, the government asked Kletselman about his own understanding of the term "runners."[3] Indeed, Kletselman testified that he and Tsekhavonich were introduced to each other by a "runner that we both knew."

In sum, the District Court did not exceed its allowable discretion by admitting the challenged testimony here because the government demonstrated that Kletselman's lay opinion testimony was sufficiently based on and rationally derived from Kletselman's first-hand perceptions.

For the foregoing reasons, we AFFIRM the judgment of the District Court.

---

[3] Similarly, Tsekhanovich assumes in his brief that the third colloquy he challenges contains a question about what Tsekhanovich meant by the phrase "a good estimate." However, the full context of the colloquy indicates that the government asked Kletselman what Zhukov meant by that phrase. As the answer to this question is evidence of Zkuhov's, not Tsekhanovich's, state of mind, Tsekhanovich does not appear to have a persuasive basis for excluding this evidence.