22-675
*United States v. Discala*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 22nd day of June, two thousand twenty-three.

PRESENT:

> ROSEMARY S. POOLER,
> RICHARD J. SULLIVAN,
> BETH ROBINSON,
> *Circuit Judges.*

———————————————————————————

UNITED STATES OF AMERICA,

> *Appellee,*

> v.                                                      No. 22-675

ABRAXAS J. DISCALA, a.k.a. AJ DISCALA,

> *Defendant-Appellant.*[*]

———————————————————————————

———————————————

[*] The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

For Defendant-Appellant: HARRY SANDICK (Bonita Robinson, *on the brief*), Patterson Belknap Webb & Tyler LLP, New York, NY.

For Appellee: SHANNON C. JONES (David C. James, *on the brief*), Assistant United States Attorneys, *for* Breon Peace, United States Attorney for the Eastern District of New York, Brooklyn, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Eric N. Vitaliano, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Abraxas J. Discala appeals following a jury trial in which he was convicted of securities fraud, wire fraud, conspiracy to commit securities fraud, and conspiracy to commit mail and wire fraud. The district court thereafter sentenced Discala to a term of 138 months' imprisonment and ordered Discala to pay $16,346,023 in restitution. On appeal, Discala raises a litany of challenges to his conviction and to the restitution order, which we address in turn. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

2

**I.      Motion to Suppress Wiretap Evidence**

Discala argues that the district court erred in denying his motion to suppress

evidence obtained from a wiretap of Discala's phone, and at the very least should

have granted his request for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154

(1978). Discala asserts that the affidavit supporting the wiretap application

contained numerous misrepresentations and omissions suggesting that the affiant

– Special Agent Michael Braconi – acted, at a minimum, recklessly in making the

submission. Discala further claims that these misrepresentations and omissions

were central to the probable-cause determination and that, had such

misrepresentations and omissions been corrected, the wiretap application would

no longer support a finding of probable cause. Because the admission of wiretap

evidence prejudiced him at trial, Discala claims that vacatur or reversal of his

conviction is warranted.

To demonstrate entitlement to a *Franks* hearing, a defendant must (1) make

a "substantial preliminary showing" that an affiant included in the affidavit "a

false statement knowingly and intentionally, or with reckless disregard for the

truth," and (2) show that "the allegedly false statement is necessary to the finding

of probable cause." *Franks*, 438 U.S. at 155–56; *see also United States v. Rajaratnam*, 719 F.3d 139, 146 (2d Cir. 2013).

In reviewing a district court's denial of a *Franks* hearing, we review conclusions of law de novo and factual conclusions for clear error. *See United States v. McKenzie*, 13 F.4th 223, 236 (2d Cir. 2021).[1] Whether an affiant acted intentionally or recklessly is a factual question subject to clear error review. *Id.* at 237. By contrast, whether a false statement is material to the probable cause determination is a mixed question of law and fact that we review de novo. *Id.*

Contrary to Discala's contention, we see no clear factual error nor any legal error in the district court's decision to deny his request for a *Franks* hearing. Although it is true that an affiant's recklessness can be inferred from circumstantial evidence, *see Rajaratnam*, 719 F.3d at 154–55, applying the above standards, we discern no error in the district court's determination that Discala

---

[1] We recognized in *McKenzie* that there is some confusion "regarding the standard of review for denial of a *Franks* hearing in the Circuit." *McKenzie*, 13 F.4th at 236. But, as in *McKenzie*, the aforementioned mixed standard of review "is workable in this case, and we need not reconcile the conflicting authorities on this subject." *Id.* at 237; *see also United States v. Sandalo*, No. 21-708-CR, 2023 WL 3880789, at *7 (2d Cir. June 8, 2023) (acknowledging the mixed authority and circuit split on the appropriate standard of review for denial of a *Franks* hearing, but explaining that we "review [a] district court's factual findings of falsity and knowledge for clear error and its determinations of materiality *de novo*").

4

failed to make the requisite showing that the wiretap affiant acted with reckless disregard for the truth of his statements under the first prong of *Franks*.

With regard to the purported misrepresentations regarding Discala's trading history, the district court did not err in finding that Discala had failed to demonstrate that Braconi acted intentionally or recklessly, rather than making a reasonable mistake of fact in reliance on the records available to him when authoring the affidavit.

Discala also makes much of Braconi's characterizations of an SEC bulletin regarding reverse mergers and certain SEC filings made by companies involved in the scheme. Again, the district court did not clearly err in concluding that, in context, these purported misrepresentations and omissions are insufficient to give rise to an inference of recklessness. With regard to the SEC bulletin, the wiretap affidavit twice explicitly stated that reverse mergers are not per se unlawful, and specifically explained why the reverse merger at issue had the trappings of illegality. The fact that the wiretap affidavit may have omitted a piece of cautionary language when discussing a July 2013 filing does not support an inference of recklessness – particularly given that this cautionary language was not directly related to Braconi's main point regarding the significance of this filing.

*See United States v. Awadallah*, 349 F.3d 42, 67–68 (2d Cir. 2003) (noting that "[a]n affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation" (internal quotation marks omitted)). Nor can Discala claim that the affidavit's discussion of a 2014 Form 8-K indicated recklessness on the part of Braconi; indeed, as the district court noted, Braconi's assertions regarding the 2014 Form 8-K were made in reliance on the representations of SEC staff and attorneys as to the appropriate interpretation of the SEC regulations, thereby undercutting any claim that such assertions demonstrate recklessness.

As to Discala's contention that a *Franks* hearing was warranted because the wiretap affiant failed to disclose that a confidential source was Discala's former attorney, we note that Discala did not raise this argument in his motion to suppress before the district court. It is well-settled that "the failure to assert a particular ground in a pre-trial suppression motion" will typically preclude a "challenge [to] the subsequent admission of evidence on that ground," unless good cause for the oversight is shown. *United States v. Klump*, 536 F.3d 113, 120 (2d Cir. 2008) (internal quotation marks omitted). But even on the merits, Discala's argument is unpersuasive. Discala's brief fails to identify any privileged information that

was revealed by the confidential source, any specific statements by the source that would have put Braconi on notice of a potential violation of Discala's rights, or even that Braconi was aware that the confidential source was Discala's former attorney when drafting the affidavit. As such, we conclude that this purported omission – whether considered individually or collectively with the other challenged representations and omissions in the affidavit – fails to provide a basis for inferring recklessness, let alone intent. We therefore decline to disturb the district court's denial of the request for a *Franks* hearing.

But even assuming that Discala *had* made a sufficient showing of recklessness under the first prong of *Franks*, he still would not be entitled to a hearing because he has failed to demonstrate that "the allegedly false statement[s] [were] necessary to the finding of probable cause," as required under *Franks*' second prong. 438 U.S. at 156. In determining whether misstatements or omissions in a wiretap application are material, we set aside any falsehoods in the application and determine whether the untainted portions of the application are sufficient to support a finding of probable cause. *Rajaratnam*, 719 F.3d at 146. We agree with the district court that – even were the alleged misstatements to be removed and the allegedly omitted information to be added – the wiretap

7

application still would support a finding of probable cause. Here, the wiretap application relied on a detailed 111-page affidavit that drew on a wide variety of uncontested sources – including stock prices, text messages, telephone records, victim reports, public filings, and other informants. These sources provided ample support for the conclusion that a crime was underway. For example, the affidavit detailed a number of text messages sent and received by Discala that corroborate the existence of a fraudulent scheme. *See, e.g.*, J. App'x at 154 (text messages suggesting that Discala was coordinating with brokerage firm to create appearance that there was market for company's stock), 157–59 (Discala describing a co-conspirator as "really dangerous" because he was "using stupid words" and referenced "shares [they] control"), 164 (a co-conspirator urgently informing Discala that other co-conspirators were "about to [mess] up" by asking for $2,000 per share). The affidavit also relied upon information gathered from a second confidential informant, who corroborated Discala's involvement in stock-manipulation activities. *See id.* at 137–38 (describing conversations with a confidential informant who stated "in sum and substance that Discala was planning to manipulate the share price" of a company). When viewed in the context of the application as a whole, the challenged representations and

8

omissions were clearly not material. The district court therefore did not err in denying Discala's motion to suppress wiretap evidence without first holding a *Franks* hearing.

## II.  Motion to Suppress Search Warrant Evidence

Discala also asserts that the district court erred in denying his motion to suppress the fruits of the warrant authorizing a search of the offices of Discala's business, OmniView Capital Advisors LLC ("OmniView").  According to Discala, the warrant failed to satisfy the Fourth Amendment's particularity requirement.  In order to satisfy the particularity requirement, a warrant must (1) "identify the specific offense for which the police have established probable cause"; (2) "describe the place to be searched"; and (3) "specify the items to be seized by their relation to designated crimes."  *United States v. Purcell*, 967 F.3d 159, 178 (2d Cir. 2020) (internal quotation marks omitted).  Discala contends that the OmniView warrant failed to meet the first and third particularity requirements.  Specifically, Discala asserts that the warrant identified only broad, "catchall" statutory provisions that failed to provide readily ascertainable guidelines for the executing law enforcement officers, and that it authorized the seizure of practically every document on the OmniView premises without

tethering the list of items to be seized to the offenses for which probable cause had been established.   We disagree.

Here, the warrant specifically identified the offenses for which probable cause had been established, described the place to be searched, and included an illustrative list of items to be seized in relation to the designated crimes.   This illustrative list – which was subject to a temporal limitation and which specifically identified the companies at the core of the government's investigation, other individuals suspected of being involved in the scheme, and several specific categories of relevant documents – provided meaningful guidance for the officers executing the search as to render the warrant sufficiently "particularized."   *United States v. Riley*, 906 F.2d 841, 844–45 (2d Cir. 1990); *see also United States v. Young*, 745 F.2d 733, 759–60 (2d Cir. 1984).

## III.   Lay-Opinion Testimony

Discala next contends that the district court erred in permitting certain witnesses to offer lay-opinion testimony that failed to satisfy the requirements set forth in Federal Rule of Evidence 701.   In particular, Discala asserts that the district court improperly permitted a cooperating witness, Matthew Bell, to repeatedly use the terms "illegal" and "manipulation" – statements that Discala

10

claims embody legal conclusions – in describing the conduct at issue.   Discala Br.

at 90–91.   Discala also argues that the district court improperly allowed Special

Agent Constantine Voulgaris to provide testimony that was based on his

specialized knowledge – not his personal perceptions – and that such testimony

improperly influenced the jury.

"We review a district court's decision to admit evidence, including

lay[-]opinion testimony, for abuse of discretion."   *United States v. Tsekhanovich*,

507 F.3d 127, 129 (2d Cir. 2007) (internal quotation marks omitted).   A district

court abuses its discretion when "its decision rests on an error of law . . . or a

clearly erroneous factual finding," or "its decision – though not necessarily the

product of a legal error or a clearly erroneous factual f[i]nding – cannot be located

within the range of permissible decisions."   *United States v. Kaplan*, 490 F.3d 110,

118 (2d Cir. 2007) (internal quotation marks omitted).   If a district court

erroneously admits evidence and a timely objection is raised, we will conduct

harmless error review.   *See* Fed. R. Crim. P. 52(a).   The admission of evidence

will be considered harmless when we "can conclude with fair assurance that the

evidence did not substantially influence the jury."   *United States v. Al-Moayad*, 545

F.3d 139, 164 (2d Cir. 2008) (internal quotation marks omitted).   In conducting

11

harmless-error review, we consider:   "(1) the overall strength of the prosecution's case; (2) the prosecutor's conduct with respect to the improperly admitted evidence; (3) the importance of the wrongly admitted evidence; and (4) whether such evidence was cumulative of other properly admitted evidence."   *Id.* (internal quotation marks and alteration omitted).

Although the government concedes that the district court erred in allowing some of the challenged testimony to be admitted at trial, it contends that any errors were harmless and that reversal of Discala's conviction is not warranted.   We agree.   The government's case against Discala was strong.   At trial, the government solicited the testimony of five cooperating witnesses, which was corroborated by text messages, trading records, various documents, and expert testimony.   *See, e.g.*, Gov. App'x at 262–63 (Bell testifying regarding his text messages with Discala about coordinating trades and sale prices); 209 (wiretap call transcript in which Discala refers to himself as the "brake and the gas" in determining the price of stock); 156 (chart prepared by government expert demonstrating volume of trading over time).   And three cooperating witnesses *other* than Bell testified that they personally engaged in the manipulation scheme with Discala.   *See* J. App'x at 1043 (Sloan testifying that he coordinated with

12

Discala to "artificially inflate[] the price of the stocks" and "create[] false volume by using wash sales"), 1094 (Wexler testifying that he "planned and manipulated stock prices of companies on the open market" with Discala), 1190–91 (Azrak testifying that he and Discala "manipulated the price of certain stocks"). In light of the wealth of other evidence available, we can fairly conclude that the jury would have had little need to rely upon the disputed portions of Bell's and Voulgaris' testimony.

Furthermore, the fact that the government did not rely on Voulgaris' disputed testimony during summation provides further support for the conclusion that this testimony was not central to the government's case and did not provide unique insights as compared to other evidence.[2]

In short, we cannot conclude that the admission of the challenged lay-opinion testimony prejudiced Discala: the government's case against Discala was strong, the challenged testimony was not central to the government's case at trial, and the wealth of other evidence in the record rendered the challenged testimony either unimportant or cumulative. Accordingly, any errors the district

---

[2] We need not decide whether the district court's unobjected-to limiting instruction that Special Agent Voulgaris was not opining on Discala's culpability negated the impact of any erroneously admitted testimony; even without the instruction, in the context of the trial evidence as a whole, any error in admitting Special Agent Voulgaris' testimony was harmless.

13

court committed with regard to the challenged lay-opinion testimony were harmless and do not warrant reversal of Discala's conviction.

## IV. Conscious-Avoidance Instruction

Discala additionally asserts that a new trial is warranted because the district court erroneously gave a conscious-avoidance instruction, over defense counsel's objection. Specifically, Discala argues that the conscious-avoidance charge was erroneous and prejudicial because the government failed to establish the requisite factual predicate for this charge, as there was no evidence suggesting that Discala consciously avoided learning disputed facts. We review preserved claims of error in jury instructions de novo, "reversing only where, viewing the charge as a whole, there was a prejudicial error." *United States v. Aina-Marshall*, 336 F.3d 167, 170 (2d Cir. 2003).

"A conscious[-]avoidance instruction permits a jury to find that a defendant had culpable knowledge of a fact when the evidence shows that the defendant intentionally avoided confirming the fact." *United States v. Ferrarini*, 219 F.3d 145, 154 (2d Cir. 2000). A district court may properly give such an instruction only "when a defendant asserts the lack of some specific aspect of knowledge required for conviction" and "the appropriate factual predicate for the charge exists."

14

*Kaplan*, 490 F.3d at 127 (internal quotation marks omitted). An appropriate factual predicate exists when "the evidence is such that a rational juror may reach the conclusion beyond a reasonable doubt that the defendant was aware of a high probability of the fact in dispute and consciously avoided confirming that fact." *Id.* (internal quotation marks omitted). That said, an erroneously given conscious-avoidance instruction constitutes harmless error when there is "overwhelming evidence" of the defendant's actual knowledge and the jury is properly instructed on actual knowledge. *Ferrarini*, 219 F.3d at 157.

We cannot say that the district court's conscious-avoidance instruction warrants reversal in this case. Although the government's principal argument was that Discala had actual knowledge of the disputed facts at issue, this did not preclude the government from arguing – or the district court from concluding – that this same evidence could support a conscious-avoidance instruction. *See, e.g.*, *United States v. Svoboda*, 347 F.3d 471, 480 (2d Cir. 2003); *United States v. Hopkins*, 53 F.3d 533, 542 (2d Cir. 1995). And, indeed, the record here demonstrates that Discala repeatedly asserted a lack of knowledge as to the fraud. *See* J. App'x at 1374 (testifying to his understanding that the escrows were a way to protect the company and its investors); *id.* at 1378 (denying that he controlled

15

price of stocks); Gov. App'x at 362–64 (asserting in summation that escrows were used for "right and legal thing" and that Discala's text messages were "not conversations about stock manipulation"). The record also contains evidence from which a juror could properly infer that Discala consciously avoided confirming facts regarding illegal activity. *See* Gov. App'x at 166 (explaining that he "d[id]n't know" how aspects of the escrow worked and that the person overseeing the escrows "d[id]n't even like to talk about it"); *id.* at 220 (stating that he was "learning" not to openly discuss "what anyone else [was] doing" and that he didn't "want to have anything to do with" certain activities).

Moreover, even if the conscious-avoidance instruction was erroneously given, any such error was harmless. The district court instructed the jury on actual knowledge, and as discussed previously in the context of Discala's other arguments, the record contained ample evidence that Discala had actual knowledge of the fraud. *See Ferrarini*, 219 F.3d at 157. As such, we find no basis to reverse Discala's conviction on this ground.

## V. Restitution Order

Finally, Discala challenges the district court's order requiring him to pay restitution for losses incurred via stock-purchase and participation-purchase

16

agreements prior to March 28, 2014. Discala argues that such losses could not have been "directly and proximately" caused by the offense conduct because they predated the alleged period of market manipulation. Discala Br. at 105–07. We review a district court's order of restitution "deferentially, and we will reverse only for abuse of discretion." *United States v. Gushlak*, 728 F.3d 184, 190 (2d Cir. 2013) (internal quotation marks omitted). "Where a defendant challenges the district court's finding of facts, we review for clear error; where his arguments raise questions of law, our review is de novo." *United States v. Goodrich*, 12 F.4th 219, 227–28 (2d Cir. 2021) (internal quotations marks and alteration omitted).

The district court did not err in concluding that the $908,911 in losses incurred prior to March 28, 2014 was properly included in Discala's restitution obligation. When the offense of conviction is conspiracy, the "key question" is whether the victim's losses were "directly and proximately caused" by the offense. *Id.* at 231 (internal quotation marks omitted). As the district court correctly noted, Discala was convicted of conspiracies to commit securities fraud, mail fraud, and wire fraud that spanned from 2012 to 2014. With respect to those offenses, the district court concluded that the evidence adduced at trial clearly demonstrated that Discala played a central role in the conspiracy "from day one" and that there

was "no question" that Discala was aware of the transactions at issue or that the resulting losses were reasonably foreseeable to Discala.   Sp. App'x at 66–67.

We agree.   In rendering its verdict as to the conspiracy to commit securities fraud count, the jury explicitly identified a pre-March 2014 purchase agreement signed by Discala as an overt act committed in furtherance of the conspiracy.   *See* J. App'x at 1518.   And testimony offered at trial demonstrated that Discala was integral in facilitating pre-March 2014 private-placement transactions in an effort to raise capital and to take the company public.   Because the district court reasonably determined that Discala directly and proximately caused the disputed $908,911 in losses, we affirm the district court's restitution order.

\*     \*     \*

We have considered Discala's remaining arguments and find them to be without merit.   Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

18